**Daniel PEREZ, Petitioner–Appellant,**

v.

**Charles D. MARSHALL, Warden,
Respondent–Appellee.**

No. 96–16950.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 1997.

Decided July 22, 1997.

Michael A. Kresser, Executive Director, Sixth District Appellate Program, Santa Clara, CA, for petitioner-appellant.

Ronald E. Niver, Supervising Deputy Attorney General, and David H. Rose, Deputy Attorney General, San Francisco, CA, for respondent-appellee.

Before GOODWIN, D.W. NELSON, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

## OVERVIEW

Daniel Perez, a California prisoner, appeals the district court's order denying his petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Perez seeks to invalidate his state convictions for robbery and assault with a firearm. He argues that the trial judge violated his Sixth Amendment right to an impartial jury by removing the sole dissenting juror, Jennifer Robles, from the jury on the grounds that she was emotionally incapable of continuing to participate in the jury-deliberation process. In denying the petition, the district court concluded that the trial judge had discretion to remove the juror on the basis of her emotional instability and that the record supported the trial court's determination that Robles was unwilling and unable to remain on the jury. We affirm.

## BACKGROUND

The State of California charged Perez with multiple counts of assault and robbery as a result of four separate incidents occurring in 1992. The case was tried to a jury in Monterey County Superior Court. After the jury deliberated for one-half hour, the bailiff informed the judge that one juror, twenty-year-old Jennifer Robles, wanted to speak to him.

At an in camera hearing, Robles made clear that she entertained a reasonable doubt as to Perez's guilt, while the other jurors had voted guilty and had told her that they were going to change her mind. She explained that "everybody is mad at each other in there," that the jurors were all "stressing out," and that "the guy with the accent yelled at her." She told the judge that she was distressed and that she did not want the responsibility of deciding whether Perez was guilty.

The judge asked Robles if she was willing and able to continue deliberating. Robles asked if she would get in trouble if she did not. When the court said "no," Robles stated: "No, I don't want to. You know, I really just don't want to. I don't want to stress on it no more. Because you know, last night I went—I'm—I was all upset, and today I come back, these people are all—everybody is upset. And I don't want to."

The judge explained that "as a juror, what you have to do is partake in the decision. You have to be in there and give and take and let your views be known, and listen to other people's views." Robles responded: "What happens if I'm the only one that says that? Then I just stick that way?" The court answered yes, "[i]f you think you're right, and being reasonable," to which Robles replied: "What if I'm wrong?" The judge answered: "Those are questions I can't answer. You just have to do your best. Will you give it a try and continue to deliberate with the jurors, see how it goes?" Robles replied: "I don't want to be there. If they say he's guilty, I don't want to be sitting there. I don't want to be part of having put somebody in jail for a long time, even though he may be guilty. But—it makes me feel bad. I feel sorry for him. But then, if he's

guilty, I don't—I feel bad if he went out and hurt somebody, too, because it could be me."

The judge excused Robles from the courtroom and informed counsel that he intended to have Robles continue deliberating. The prosecution objected, arguing that Robles was refusing to deliberate as a juror. The defense counsel countered that he believed Robles was participating, "[s]he just happens to disagree."

The judge then summed-up his views on the issue:

It's a perfect appellate trap: either way I go, it's probably not going to be right. . . . She flip-flops. She indicates that she is not in favor of a guilty verdict at this point, and yet . . . . [h]e may well be guilty. She just doesn't want to take the responsibility of making a decision. . . . She seems much younger than 20. . . . She seems to me to be like a 16 year old individual.

The judge also noted that Robles had been in tears twice during the in-chambers interview. The judge then recalled Robles to the courtroom and asked her to continue to deliberate. Robles refused the judge's suggestion that she should knock on the door or tell the foreperson if she decided she no longer could participate, explaining: "No, I'm not going to say nothing in front of all those people that I don't know. They're all going to be wondering why I'm crying anyway."

The judge offered to instruct the jury to conduct their deliberations in a proper fashion, but Robles declined the offer. She informed the court that she had put off jury duty all summer until "[t]hey told me if I didn't come, they were going to send a sheriff to my house and get me." Robles finally agreed to resume deliberations.

Shortly after deliberations began again, the foreperson halted deliberations because of difficulties in the jury room. The judge excused all the jurors except for Robles until the next morning. When asked what happened, Robles explained that "the lady was mad at me" because the other eleven jurors had persuaded her to agree with them on a verdict but then she changed her mind. She stated "[w]hen I went back in there [after lunch] I told them I . . . didn't want to say

that. And then … they got up and came out here, because I want to change my answer." Robles indicated that she had been prepared to continue and that she had not refused to have further discussions with the jury.

The judge explained to Robles that a "juror is … supposed to be able to discuss the case with other jurors, and not get overly emotional." When the judge asked Robles if she was emotionally able to continue deliberations, she indicated that she was not. The judge excused Robles for the evening, and at Perez's request, agreed to wait until the next morning to determine whether Robles was fit to continue as a juror.

The next morning, the judge called the jury foreperson into court and asked her to explain what had transpired in the jury room. The foreperson explained that eleven of the jurors had been in agreement as to a verdict on count one, and that they eventually had managed to convince the holdout juror to join the verdict. After the lunch recess, however, that holdout juror changed her mind. The foreperson said, "it started to be a very emotional thing with the jurors where basically no one could try to make an intelligent decision when you're dealing with somebody that's basically in pieces … you can't get somebody to be rational when they're in that state." When asked whether the jury could continue deliberating with Robles, the foreperson said "[m]y own feeling is it's not to everybody's best interest if that person continues."

The judge then spoke with Robles, who indicated that she still did not want to continue on the jury, but said that she would if she had to. She agreed, however, that "it would be a very emotional experience … like it was yesterday with tears and everything else."

The judge concluded that Robles was incapable of continuing to participate on the jury. He expressed a wish that Robles's appearance had been recorded on a video camera, "because so much not only from what she actually expressed but what you could just tell by looking at her that she, particularly yesterday, appeared to be an emotional wreck…." He then explained:

watching today, her head is bowed; she looked tentative and coerced, and she is willing to do what she is forced to do, I suppose. With the bailiff armed in the courtroom here and the proceedings are ominous to her, and that's the impression I get…. I think she is just emotionally out of control. And so I will find cause.

The judge excused Robles from the jury. Defense counsel objected that "good cause" for Robles's removal did not exist and moved for a mistrial. The judge denied this motion and substituted an alternate juror in Robles's place.

The reconstituted jury began deliberations anew and subsequently returned guilty verdicts on counts one through five. The jury was unable to reach verdicts on the remaining counts, so the court declared a mistrial as to those counts. The court sentenced Perez to twenty-seven years, four-months imprisonment.

Perez appealed to the California Court of Appeals and to the California Supreme Court, both of which affirmed his conviction. Perez then filed this habeas corpus petition in the Northern District of California, arguing: 1) that the trial court deprived him of his Sixth Amendment right to trial by jury when it dismissed Robles; 2) that the trial court erred by failing to admonish the jury to deliberate fairly; 3) that the trial court erred by allowing Robles to reveal to the court the jury's numerical division; and 4) that the trial court coerced the guilty verdict by dismissing the sole dissenting juror. The district court rejected all four arguments and dismissed the petition.

After the district court issued a certificate of appealability, Perez timely appealed to this court, abandoning all but the first of the four arguments raised above: that the district court violated his Sixth Amendment right to trial by jury by dismissing juror Robles on the basis of her emotional condition.

**STANDARD OF REVIEW**

We review de novo the district court's decision to grant or deny a section

2254 habeas petition. *Martinez–Villareal v. Lewis,* 80 F.3d 1301, 1305 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996). In reviewing the district court's decision, the state court's factual determinations are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *See Rushen v. Spain,* 464 U.S. 114, 120, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983) (per curiam).

 Whether a trial court violates a defendant's Sixth Amendment right to a jury trial by excusing a juror for good cause and replacing that juror with an alternate is a question of law which we review de novo. We have not previously decided the proper standard to apply on habeas review to a trial court's underlying factual finding that good cause exists for the removal of a juror. On direct review, a district court's decision to excuse a juror for just cause is reviewed for abuse of discretion. *United States v. Tabacca,* 924 F.2d 906, 913 (9th Cir.1991). However, on habeas review, a trial court's findings regarding juror fitness are entitled to special deference. *Cf. Patton v. Yount,* 467 U.S. 1025, 1036–38 & n. 12, 104 S.Ct. 2885, 2891 & n. 12, 81 L.Ed.2d 847 (1984) (whether a juror can render an impartial verdict is a question of historical fact entitled to special deference). Accordingly, we review for manifest error the trial court's determination that Robles was emotionally incapable of continuing to deliberate.

## DISCUSSION

 The trial court excused and replaced Juror Robles with another juror after deliberations began pursuant to California Penal Code § 1089, which provides:

> If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged and draw the name of an alternate, who shall then take his place in the jury box, and be subject to the same rules and regulations as though he had been selected as one of the original jurors.

In *Miller v. Stagner,* 757 F.2d 988, 995 (9th Cir.), *amended,* 768 F.2d 1090 (1985), we considered and upheld the constitutionality of section 1089 under the Sixth Amendment. In *Miller,* the trial court dismissed two jurors on the fifth day of jury deliberations pursuant to section 1089. The court dismissed one of the jurors because she had called in sick that morning. *Id.* The court dismissed the other juror after it determined, through an in-chambers hearing, that the juror had been intoxicated during the previous day of deliberations. *Id.* The trial court replaced the two jurors with alternates and instructed the jury to begin deliberations anew.

Reviewing the district court's denial of the defendants' habeas petition, we rejected the defendants' argument that the dismissal and replacement of the two jurors deprived them of their rights to trial by jury and to due process. We explained that "[t]he California substitution procedure followed by the trial court preserved the 'essential feature' of the jury required by the Sixth and Fourteenth Amendments." *Id.*

Because we decided in *Miller* that section 1089 is facially valid under the Sixth Amendment, we need only decide whether its application in the circumstances of this case violated Perez's Sixth Amendment rights. Thus, we must determine: 1) whether good cause existed in this case for the trial court to excuse juror Robles; and 2) whether the district court violated Perez's Sixth Amendment rights by excusing Robles when it knew that Robles was the lone juror holding out for an acquittal.

Substantial evidence supports the trial court's conclusion that good cause existed for dismissing Robles. The trial court conducted a lengthy interview with juror Robles before determining that she was unfit to continue deliberating. Although Robles informed the judge that she would try to continue deliberating if forced to do so, she repeatedly indicated that she was not willing and able to continue as a juror. She herself indicated that, if she was forced to continue as a juror, it would be a very emotional experience, "with tears and everything else."

Shortly after the trial judge persuaded her to return to the jury room, the jury foreperson was forced to discontinue deliberations because of Robles's emotional state. The foreperson explained that Robles was "basically in pieces" and that you just "can't get somebody to be rational when they're in that state."

The trial court was in a superior position to observe Robles's physical appearance and demeanor and thereby to determine her ability to continue deliberating. The trial court reported that "she, particularly yesterday, appeared to be a emotional wreck. And watching her today, her head is bowed; she looked tentative and coerced ... she is just emotionally out of control." The prosecutor shared this assessment of Robles's appearance, stating that she appeared "completely distraught." Under these circumstances, the trial court did not err by concluding that good cause existed for Robles's removal from the jury.

Appellate courts have upheld the dismissal and replacement of jurors whose physical or mental condition prevented them from effectively participating in deliberations. *See United States v. Leahy*, 82 F.3d 624, 629 (5th Cir.1996) (district court did not abuse its discretion by dismissing juror whose hearing impairment prevented him from effectively participating in deliberations); *United States v. Huntress*, 956 F.2d 1309, 1312–13 (5th Cir.1992) (district court did not abuse its discretion by dismissing juror whose mental condition degraded due to stress of jury service); *United States v. O'Brien*, 898 F.2d 983, 986 (5th Cir.1990) (district court did not err in dismissing juror who suffered relapse of depression after one day of deliberations); *United States v. Wilson*, 894 F.2d 1245, 1250 (11th Cir.1990) (district court did not err in dismissing juror during deliberations due to her poor health). Of course, we recognize that Robles's emotional condition is different from a hearing impairment, a mental illness, or a poor physical health condition in that it could be related to her viewpoint on the merits of the Government's case. In other words, Robles's infirmity as a juror could have been triggered or exacerbated by her disagreement with the other jurors as to

Perez's guilt. Nevertheless, the trial judge properly removed Robles from the jury because Robles's emotional instability prevented her from continuing to perform the essential functions of a juror in the same way that a hearing impairment, a mental illness, or a poor health condition would have.

The fact that the trial judge knew that Robles was the sole juror holding out for an acquittal when he dismissed her does not invalidate his decision to excuse her from jury service. The Fifth Circuit has upheld the removal of jurors for cause, even where the court knew that the removed juror was holding out for acquittal. *See Huntress*, 956 F.2d at 1313 (fact that removed juror was a holdout did not "raise a red flag"); *Leahy*, 82 F.3d at 629 n. 4 ("Evidence that a juror was holding out ... does not alter the trial court's discretion in removing the juror."). As the district court noted, "[n]othing in the record indicates that the trial court's discretion was clouded by the desire to have an unanimous guilty verdict." In fact, the record shows that the district court was forced to act, not because of Robles's status as a holdout juror, but because of Robles's emotional inability to continue performing the essential function of a juror-deliberation.

After Robles blurted out the jury's deadlocked stance on Perez's guilt, the trial judge faced limited alternatives. He could not order the jury just to continue deliberations, because Robles was emotionally unable to continue deliberating. He also could not sua sponte order a mistrial because jeopardy had attached and, absent a finding of manifest necessity, the Double Jeopardy Clause of the Fifth Amendment would have precluded the State from trying Perez before a new jury. *See United States v. Sammaripa*, 55 F.3d 433, 434 (9th Cir.1995). A finding of manifest necessity under these circumstances is indistinguishable from a finding that good cause justified excusing Robles from the jury.

The record reflects that the trial judge took great pains to preserve the originally empaneled jury. He interviewed Robles at length and offered alternatives to ease the stress of deliberations. He also encouraged her to continue deliberating and steadfastly

to maintain her position if she believed she was correct. The trial judge excused Robles for cause only after deliberations broke down twice, and after Robles herself indicated that she was not emotionally able to continue deliberations.

Moreover the record reflects that the jury engaged in careful deliberations after the judge excused Robles and replaced her with an alternate. The reconstituted jury was unable to reach a verdict on several counts, which suggests that the trial judge's removal of juror Robles in no way coerced the jurors nor affected their willingness to hold out for an acquittal in the face of disagreement. On this record, we find no error in the trial court's patient decision to excuse juror Robles for cause.

## CONCLUSION

Having previously determined that California Penal Code section 1089, which provides for the removal and replacement of jurors for good cause, is facially constitutional, the only question before us is whether the trial court's removal of juror Robles in the circumstances of this case violated the Sixth Amendment. Because the trial court's determination that good cause existed for the removal of juror Robles is well-supported by the record, and because there is no evidence to suggest that the trial court's decision was motivated by Robles's views on the merits of the government's case, we affirm the district court's denial of habeas relief.

AFFIRMED.

D.W. NELSON, Circuit Judge, dissenting:

I am unable to join the majority's opinion because I believe that Perez's Sixth Amendment right to a fair trial was violated when Robles was dismissed from the jury.

In *Miller v. Stagner*, 757 F.2d 988 (9th Cir.1985), we upheld California's juror-substitution procedure, codified at Cal.Penal Code § 1089, against constitutional attack. We noted that the procedure "preserved the 'essential feature' of the jury required by the Sixth and Fourteenth Amendments." *Id.* at 995. Of course, the facial validity of section 1089 does not mean that its application in

this case was constitutional; *Miller* did not hold that *any* dismissal for "good cause" under section 1089 would be permitted under the Sixth Amendment. Nor did *Miller* define the meaning of "good cause" in a case such as this one, where the judge was alerted to a juror's status as the lone dissenter and dismissed that juror despite the fact that the remaining jurors knew that the judge was aware that the dismissed juror was the lone holdout. Thus, *Miller* only provides us with a point of departure. It does not dictate how we are to analyze a claim that a particular application of California's juror-substitution statute violates the Constitution.

In the absence of clear direction, I believe that our consideration of whether or not a trial court has good cause to dismiss a juror must be informed by an *initial* determination of whether or not the juror's dismissal implicates the defendant's Sixth Amendment rights. Our scrutiny of good cause should be especially searching where the dismissal does implicate such a right. Thus, the question of whether or not the trial court's action was justified by good cause cannot be answered until we explore the impact such dismissal had upon Perez's Sixth Amendment rights.

I believe that Robles's dismissal had a substantial impact upon those rights. Until today, our circuit has not addressed the question of whether the dismissal of a juror violates a defendant's Sixth Amendment rights where the judge knows that the dismissed juror is the lone holdout and the 11 remaining jurors are aware that the judge acted with this knowledge. In the absence of controlling precedent, cases addressing the propriety of an *Allen* charge provide a useful analogy because this case, like an *Allen* case, raises the specter of jury coercion.

We scrutinize an *Allen* charge to determine whether it had a coercive effect on the jury. *See United States v. Wills*, 88 F.3d 704, 717 (9th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 499, 136 L.Ed.2d 390 (1996); *United States v. Ajiboye*, 961 F.2d 892, 893 (9th Cir.1992) ("In this circuit, a district judge's *Allen* charge is upheld in all cases except those where it's clear from the record that the charge had an impermissibly 'coercive effect' on the jury."). In *Jiminez v.*

*Myers,* 40 F.3d 976 (9th Cir.1993), we concluded that the defendant was denied a fair trial where the trial court, after learning that only one juror remained in the minority (without knowing whether the holdout was for conviction or acquittal), required the jury to continue its deliberations to the end of the day. We concluded in *Jiminez* that this instruction "sent a clear message that the jurors in the majority were to hold their position and persuade the single hold-out juror to join in a unanimous verdict, and the hold-out juror was to cooperate in the movement toward unanimity." *Id.* at 981.

Of course, the trial court's decision to remove Robles did not coerce *Robles* into joining the majority. But it did send a strong message to the remaining 11 jurors that the trial court endorsed their proclivity for conviction and implicitly encouraged them to "hold their position." *Cf. Ajiboye,* 961 F.2d at 894 (where judge knows of the jury's division, "reversal is necessary if the holdout jurors could interpret the charge as directed specifically at them-that is, if the judge knew which jurors were the holdouts *and* each holdout juror knew that the judge knew he was a holdout"). This kind of reverse coercion interferes with the jury's independent deliberations and threatens the defendant's Sixth Amendment right to a fair trial. A replacement juror, no matter how novel or persuasive her argument for Perez's acquittal may have been, would have been hard-pressed to overcome the trial court's implied admonition to the original jurors to hold their ground and convict.

The fact that Robles's dismissal implicates Perez's Sixth Amendment right to a fair trial does not necessarily mean that this right was in fact violated. The trial court's action may be saved from constitutional attack if the dismissal was justified by good cause. That is to say: Good cause ensures that the jury will attribute a holdout's dismissal to a neutral reason, and not to the trial court's endorsement of the majority jurors' inclination to convict. However, the asserted good cause must be sufficient to overcome the danger that the prohibited attribution is made.

Considering the important constitutional right at stake, I do not believe that good cause supported Robles's dismissal from the jury. Robles's emotional state was not the product of an irrational or unprovoked reaction. *Compare United States v. Huntress,* 956 F.2d 1309, 1313 (5th Cir.1992) (dismissed juror suffered from "severe, pre-existing condition [paranoia] related to a history of drug abuse" and had checked himself into hospital after threatening to ingest "fire ant killer" if hospital refused to admit him). To the contrary, Robles was distraught to find herself as the lone dissenting juror. Hers was an emotional reaction to what is universally recognized as a stressful experience. Moreover, the stress of this experience was exacerbated by the fact that Robles was the lone holdout. Nevertheless, although Robles was mentally and emotionally distressed (even hysterical) about the jury deliberations, Robles indicated to the trial court that she was prepared to continue the deliberations and that she had not refused to have further discussions with the other jurors. *Compare United States v. Leahy,* 82 F.3d 624, 629 (5th Cir.1996) (dismissed juror suffered from hearing impairment and refused to discuss the case in deliberations). To find good cause for dismissal here opens the door to finding good cause for removing any juror who is upset to find that she is the lone holdout but remains willing to participate in a discussion of the defendant's guilt.

The majority recognizes that the cases upon which it relies to find good cause are readily distinguishable. Nevertheless, it concludes that "Robles's emotional instability prevented her from continuing to perform the essential functions of a juror in the same way that a hearing impairment, a mental illness, or a poor health condition would have." I disagree. For one thing, the essential functions of a juror include the duty to articulate any reservations she may harbor regarding the defendant's guilt or innocence, no matter how difficult it may be to go against the sentiment of the overwhelming majority. Robles's emotional condition was produced by her performance of this duty. It did not prevent her from executing this essential function; indeed, Robles continued to maintain her position as a holdout juror

even after her emotional condition had become apparent.

More fundamentally, Robles never indicated that she refused to deliberate. Twice Robles told the trial court that she was prepared to continue the deliberations. Indeed, based upon the trial court's conversation with the jury foreperson, it is just as likely that the 11 members of the majority refused to deliberate with Robles. In light of the facts of this case, and informed by the Sixth Amendment right to a fair trial, I am unable to conclude that Robles's dismissal was justified by good cause.

Unlike the majority, I believe that a trial court's dismissal of a lone holdout, where the remaining jury members are aware that the court knows of the dismissed juror's status as the lone holdout, does raise a red flag. That red flag is the Sixth Amendment, and it demands that sufficient good cause be shown before the dismissal will be deemed to comport with the Constitution. Because I believe that this standard was not met, I respectfully dissent from the majority's conclusion that Perez's Sixth Amendment right to a fair trial was not violated.