Marcus C. SANDERS, Petitioner–
Appellee,

v.

A.A. LAMARQUE, Warden,
Respondent–Appellant.

No. 02–56893.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 2003.

Filed Feb. 3, 2004.

944

Before HALL, THOMAS, and PAEZ, Circuit Judges.

Opinion by Judge THOMAS; Dissent by Judge HALL

## OPINION

THOMAS, Circuit Judge:

Warden A.A. Lamarque appeals the judgment of the district court granting state prisoner Marcus C. Sanders' petition for a writ of habeas corpus based on the state trial court's dismissal of the lone holdout juror. We affirm.

### I

■ The protection of holdout jurors from coercion has been a fundamental part of our federal jurisprudence. The Supreme Court has long held that it is improper for a trial judge to inquire as to the numerical division of a deadlocked jury. *See Brasfield v. United States*, 272 U.S. 448, 449–50, 47 S.Ct. 135, 71 L.Ed. 345 (1926); *Burton v. United States*, 196 U.S. 283, 307–08, 25 S.Ct. 243, 49 L.Ed. 482 (1905). Indeed, "[i]f a trial judge inquires into the numerical division of the jury and then gives an *Allen* charge, the charge is per se coercive and requires reversal." *United States v. Ajiboye*, 961 F.2d 892, 893–94 (9th Cir.1992) (citations omitted). As a matter of federal law, this is true even when the judge inadvertently is informed of the division. *See United States v. Sae–Chua*, 725 F.2d 530, 532 (9th Cir. 1984).[1]

■ Removal of a holdout juror is the ultimate form of coercion. Thus, " 'a court may not dismiss a juror during delibera-

Ana Duarte, Office of the Attorney General of the State of California, for the respondent-appellant.

Tina Long Rippy, Whittier, CA, for the petitioner-appellee.

---

1. The Sixth Amendment to the Constitution establishes that a criminal defendant has a right to a fair and impartial jury. U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."). This right applies to defendants in state court, through the action of the Fourteenth Amendment. *See Williams v. Florida*, 399 U.S. 78, 86, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970).

tions if the request for discharge stems from doubts the juror harbors about the sufficiency of the government's evidence.'" *United States v. Symington,* 195 F.3d 1080, 1085 (9th Cir.1999) (quoting *United States v. Brown,* 823 F.2d 591, 596 (D.C.Cir.1987)). "The reason for this prohibition is clear: 'To remove a juror because he is unpersuaded by the Government's case is to deny the defendant his right to a unanimous verdict.'" *Id.* (quoting *United States v. Thomas,* 116 F.3d 606, 621 (2d Cir.1997)). As the D.C. Circuit observed:

> If a court could discharge a juror on the basis of such a request, then the right to a unanimous verdict would be illusory. A discharge of this kind would enable the government to obtain a conviction even though a member of the jury that began deliberations thought that the government had failed to prove its case. Such a result is unacceptable under the Constitution.

*Brown,* 823 F.2d at 596.

On habeas review, we have held that the fact that a state trial judge knew that a juror was the lone holdout did not, by itself, invalidate the trial judge's decision to excuse the juror for cause. *Perez v. Marshall,* 119 F.3d 1422, 1427 (9th Cir. 1997). Important to our conclusion in *Perez* was the fact that the district court had specifically found that the state trial court's decision was not based on "a desire to have a unanimous verdict," but rather that the trial court "was forced to act" because of the juror's "emotional instability to continue performing the essential function of a juror-deliberation." *Id.*

## II

This case involves the removal of the lone holdout juror after the state trial court learned of that fact. Here, on the third day of jury deliberations, the jury foreperson (Juror 2) sent the trial court a note complaining that Juror 4 was not properly following the court's instruction "not to be influenced by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling." The trial court responded by inviting Juror 2, Juror 4, and then Juror 3 separately into chambers for further questioning. All three jurors were questioned individually and only in the presence of counsel. Although the court attempted to avoid soliciting the information, it became clear through the interviews that the jury was split 11 to 1 and that Juror 4 was the only juror in favor of acquittal—a fact that the trial judge acknowledged on the record as being "obvious."

Juror 2 told the court that Juror 4 "was putting her emotions into play, and that she just felt that she believed everything that the defendant said." Juror 2 reported that Juror 4 had stated that she did not trust the police and felt that the police had been badgering a key prosecution witness. Juror 2 testified that she finally told Juror 4, "It is not just my judgment but the judgment of 11 jurors [that] you are incapable of doing this. So I have no other choice but to send[the judge] this note."

When questioned, Juror 4 testified that she went into deliberation paying attention to both sides; that she "deeply" felt that she was fair and objective; that she requested that the jury go through the witnesses one by one—a request that initially was rebuffed by the other jurors; and that she had pointed out some parts of the evidence about which there could be doubt. She testified that the other jurors had pressured her, specifically noting that:

> [On] Friday I was pretty beat up on in that room by the other fellow jurors. I was told I was very confused. I was told, "you are acting like a kid." I was told a lot of things by the fellow jurors. So as far as the case, I feel pretty solid.

Later, she testified that after another juror made the statement that the jury was not getting anywhere because Juror 4 was not going to change her mind, Juror 4 told her fellow jurors:

At that point, I made a statement saying, "I—I know at this moment you are feeling like I'm holding all of you up. I feel like this now. You are making me feel like this." I said, "But I cannot change something I feel inside. I have doubt, I don't want to change my decision just to please you."

Juror 4 then offered to the other jury members to excuse herself for the purpose of moving deliberations forward, if that were allowed. She testified that later in the afternoon, one juror stated that "we're at a deadlock. Why don't we just sign that we can't come to any decision." Juror 4 testified that in response:

The foreman then said, "No, no, I can't live with myself putting someone on the street who is going—who will kill again. And so I just—no, no, I can't." I said, "Well, don't you see I feel just as strongly as you do about how you feel." I said, "You feel that way. I don't." I said, "But I'll tell you this: do whatever at this point you feel you must do to just move this on." I said, "I don't feel that it's fair for you to make me want to change how I feel." I said, "I have to leave this place and live with myself, too. I wouldn't feel too good about myself if I just made a decision just to please you. I have to go by what I truly feel inside, and these things are the way I feel."

It was at that point in the discussions that the foreperson decided to send the note to the judge. After hearing the testimony of the foreperson, Juror 4 and a third juror, the trial judge concluded that Juror 4 was not prejudiced and should not be removed from the jury because of bias or inability to follow instructions. This

finding has been uncontested, both on direct appeal and in habeas proceedings.

However, during the *in camera* discussions, a second issue emerged. Based on Juror 4's testimony, the prosecution questioned whether or not she had been truthful in voir dire. During voir dire, the trial court asked the prospective jurors preliminary questions, and then announced that the nature of the case involved a murder with a handgun. The court inquired whether anyone had experiences that would interfere with his or her ability to assess the evidence objectively.

A couple of prospective jurors volunteered information, including a woman, later selected to be Juror 4, who informed the trial court that her grandnephew was murdered in the past year after being shot 21 times. After being assured that Juror 4 could be objective, the court asked her whether the killing was gang related, to which Juror 4 responded, "That may have been. That may have been the reason." Neither the court, the defense, nor the prosecution elected to follow up with further questions.

The trial court next informed the jury pool of the location of the murder and asked: "Is there anyone who is familiar with that location because you work there, live there, had some—your job brings you to [that] location, you repair phones in that location, whatever it is, you are somehow aware and know that location?" Juror 4 did not respond to this question.

The trial court posed the following question: "Have you, your family members or any close friends ever been the victim of any violent crime or any crime in which a weapon was brandished or used?" Juror 4 responded by reminding the court that her grandnephew was murdered and affirming her belief that she could be impartial in evaluating evidence presented in a similar killing.

The trial court also inquired: "Have you, your family members or any close friends ever been accused of a crime, or arrested for any crime or investigated regarding a crime regardless of whether you were ever ultimately tried or convicted?" Juror 4 explained that her son was convicted and incarcerated for check fraud. On a follow-up question, she responded that she had visited him at the facility in which he was held.

After a few more questions, the court asked whether anyone had "ever visited a jail facility." Juror 4 reminded the court that she had visited her son while he was incarcerated.

The court proceeded to ask a series of questions including: "Do you live or work in an area where drugs are openly sold or used?"; "Do you live or work in an area where there is open gang activity?"; and "Do you have any close friends or family members who are gang members?" Juror 4 did not respond to any of the questions.

The court then asked, "What general area of Los Angeles do you live in? North, South, East, or West?" Juror 4 explained that she lived in West Los Angeles, "in the Ladera Heights."

The court also asked "[I]s there anyone here who has any particular expertise in the area [of gangs] or anyone who has studied the area, taken sociology classes on the issue? Anything above reading about it in the newspapers and the news?" Juror 4 did not respond. The court proceeded by asking individual jurors various questions regarding gangs, and then asked the entire jury, "Is there anyone who has a different opinion on that issue, that gang membership makes it impossible for that particular gang member to be an honest citizen?" Juror 4 again did not respond.

Based on her testimony *in camera*, the prosecution suggested that Juror 4 be disqualified because she had lived in the South Central area twenty-five years ago, approximately twenty blocks from the neighborhood at issue, even though she had not been back to that location in nearly twenty years.

When asked why she had not revealed during voir dire that she had once lived in the neighborhood and that her sons associated with gangs, Juror 4 explained that:

> I did not [answer the question affirmatively] because I do not, to my knowledge, live in an area [that has gangs], and you asked me do I know of or live in an area [with gangs]. I do not. I live in West Los Angeles. My sons were in their teens [when I lived in the South Central area]. One would be 40 next week, and the other is 34. They were like small kids when I stayed over in an area that—well, the reason why I'm saying in an area, actually it was on 99th and Broadway in Los Angeles ... which is not far from that area [where the murder occurred].... So when I was asked do I live in an area [with gang activity], to my knowledge I do not because I haven't been in that area [where the murder took place] since then.

At the conclusion of the argument, the trial court ordered the removal of Juror 4 because "she did fail to disclose ... that her sons claimed gang affiliation, and she lived in a neighborhood where apparently there was ... gang activity going on." After Juror 4 was replaced with an alternate, the jury reached a guilty verdict in approximately three hours.

■ After unsuccessfully pursuing his direct appeal and state collateral remedies, Sanders filed a petition for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254. The district court granted the writ, a decision we review *de novo*. *See Benn v. Lambert*, 283 F.3d 1040, 1051 (9th Cir.2002), *cert. denied*, 537 U.S. 942, 123 S.Ct. 341, 154 L.Ed.2d 249 (2002). Under the Antiterrorism and Ef-

fective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996), the state court's factual findings that underlie the district court decision are entitled to a presumption of correctness, unless the petitioner can prove otherwise by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Zichko v. Idaho,* 247 F.3d 1015, 1019 (9th Cir.2001). When a state court does not find a constitutional violation, a federal court may grant relief if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). " 'Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' Rather, that application must be objectively unreasonable." *Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

### III

■ Given the applicable law and factual record, the district court properly concluded that there was clear and convincing evidence showing that the state trial court made an objectively unreasonable determination of the relevant facts. Under the circumstances presented here, the trial court committed constitutional error when, after learning that the juror was unpersuaded by the government's case, it dismissed the lone holdout juror. The trial court's justification was founded on the prosecutor's representation that he would have exercised a peremptory challenge to disqualify the juror if he had known of the additional material disclosed during the *in camera* juror examination. Specifically, the Court stated: "the reason that I excused the juror was I felt that she had failed to disclose significant information during voir dire and that the prosecution was deprived of pertinent information in making their peremptory challenges." A trial court, however, may not remove a juror to accommodate the prosecution's desire to exercise a peremptory challenge after a jury has been impaneled. *See McDonough Power Equip. Inc. v. Greenwood,* 464 U.S. 548, 555, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) ("A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination.").

The State argues that the trial judge was justified in its decision because of the juror's purported dishonesty in answering voir dire questions. The State does not rely on actual bias. Indeed, it does not contest the trial court's factual finding that the juror did not possess actual bias. Rather, the State claims that the trial court was entitled to dismiss the juror on the basis of implied bias. "Unlike the inquiry for actual bias, in which we examine the juror's answers on voir dire for evidence that she was in fact partial, the issue for implied bias is whether *an average person in the position of the juror in controversy* would be prejudiced." *United States v. Gonzalez,* 214 F.3d 1109, 1112 (9th Cir.2000) (citations and internal quotation marks omitted) (emphasis in *Gonzalez* ). Prejudice will be presumed under circumstances in which "the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Tinsley v. Borg,* 895 F.2d 520, 527 (9th Cir.1990)

(citations and internal quotation marks omitted). For instance, federal courts have found implied bias in circumstances "where the juror is apprised of such prejudicial information about the defendant that the court deems it highly unlikely that he can exercise independent judgment even if the juror states he will," and "[t]he existence of certain relationships between the juror and defendant ... support such a presumption [of bias]." *Id.* at 528 (citations omitted). Implied bias will be found only in "exceptional" or "extraordinary" cases. *Smith v. Phillips,* 455 U.S. 209, 222 n. *, 102 S.Ct. 940 (1982) (O'Connor, J., concurring).

■ When establishing juror bias, "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *McDonough,* 464 U.S. at 556, 104 S.Ct. 845.

Here, after a thorough examination, the district court rejected the State's allegation of implied bias, holding that Juror 4 provided responsive and direct answers to questions posed to her, that she was forthcoming with information during voir dire, that there was no evidence that she intentionally or unintentionally concealed information, and that there was no evidence that she harbored bias or impermissible prejudice during the deliberation process.

■ An examination of the record supports the district court's conclusion. Juror 4 did, in fact, truthfully answer the direct questions posed to her. The trial court's conclusion that "she did fail to disclose ... that her sons claimed gang affiliation, and she lived in a neighborhood where apparently there was ... gang activity going on" is simply and objectively incorrect.

Juror 4 answered questions about her sons' activities in detail and did not, in fact, live "in a neighborhood where apparently there was ... gang activity going on." She had, a quarter of a century previously, lived in a neighborhood in some proximity to the crime scene, but that was not the question posed to her. As explained by the district court, not only was Juror 4's interpretation of the questions on voir dire reasonable, but an independent review of the record demonstrates that, by all measures, it was the correct one. All of the questions posed by the trial court relating to familiarity with the neighborhood were couched in the present tense. Whereas the trial court elected to inquire whether jurors expressly had present and past encounters with particular experiences such as visiting a jail, being a victim of crime, being accused of a crime, the knowledge of the neighborhood expressly was conditioned on the juror's present-day residence, work, or other reason that brought her into that neighborhood on a regular basis.

Likewise, all of the questions relating to gangs were specific questions about actual gang membership, academic expertise about gangs, and whether anyone presently lives or works in an area with a known gang presence. These questions expressly asked about discrete and particular contacts with gangs and are not open-ended queries into all possible contacts with gangs or gang members. In light of this record, any claim of implied bias becomes untenable.

As a final matter, it is highly significant that the trial court made a preliminary determination that Juror 4 was impartial, objective, and did not hold impermissible bias. Only after considering argument by the prosecution did the trial judge reverse her preliminary decision and remove the juror. The reason given was that the

prosecution "argued persuasively to me that they would have challenged her" if it had known of her life experiences. However, the record demonstrates that any failure by the prosecution to discover information regarding Juror 4's prior residence and the interactions that her sons had with gangs 20 years earlier was due to its own lack of diligence and not any concealment or deliberate withholding of information by Juror 4.

Thus, based on a complete examination of the record, the district court properly concluded that there was clear and convincing evidence showing that the state trial court made an objectively unreasonable determination of the relevant facts.

**AFFIRMED.**

HALL, Circuit Judge, dissenting:

The decisions of our counterparts in the California courts were perfectly reasonable. By granting the writ to the petitioner, the district court failed to pay appropriate deference to the jurists who have previously considered the petitioner's claims. Today this court repeats the error.

I respectfully dissent.

## I.

The weakness of the majority's opinion is immediately apparent. At the outset the majority implies that the Sixth and Fourteenth Amendments prohibited the state trial judge from dismissing Juror 4 after the judge inadvertently learned that she was the sole holdout in deliberations. But the Supreme Court has never imposed such a prophylactic rule on the state courts. We held in *United States v. Sae-Chua,* 725 F.2d 530, 532 (9th Cir.1984), that a federal district judge may not give an *Allen* charge [1] when the judge has inadvertently learned that a juror is the sole

holdout and the juror is aware that the judge knows this. Nevertheless, we lack power to impose this or other rules on the trial courts of all nine states in our circuit. Absent a provision for exclusive federal jurisdiction, the state courts are free to interpret federal law—including the Federal Constitution—differently from this court. *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 58 n. 11, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (the Supreme Court, speaking unanimously, called it "remarkable" that our court would imply that state courts are bound by our interpretations of federal law).

The only two Supreme Court cases the majority cites in section I of its opinion provide no support for its vague position. In *Burton v. United States,* 196 U.S. 283, 307, 25 S.Ct. 243, 49 L.Ed. 482 (1905), the Court stated that "a practice ought not to grow up of inquiring of a jury, when brought into court because unable to agree, how the jury is divided ..." In *Brasfield v. United States,* 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345 (1926), the Court held that it is not harmless error for a trial judge to inquire into how a jury is divided. Assuming, *arguendo,* that these cases announced a rule of constitutional criminal procedure binding upon the states, they still do not apply to the case before us. For the trial judge in this case did not inquire into how the jury was divided. As the majority acknowledges, the judge attempted to avoid being informed how the jury was divided.

The majority's citations to cases involving direct appeals from federal criminal convictions are also misplaced. Our standard of review in such cases is markedly different. Ironically, the principal case the majority relies upon, *United States v. Symington,* 195 F.3d 1080 (9th Cir.1999), reasoned that these divergent standards of

1. *See Allen v. United States,* 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

review served to distinguish a habeas case in which we let stand a state trial judge's dismissal for good cause of a juror whom the judge knew was the sole holdout:

> In *Perez v. Marshall*, 119 F.3d 1422 (9th Cir.1997), we faced a related question in the context of federal habeas review of a state conviction. We noted that "a trial court's findings regarding juror fitness are entitled to special deference" on habeas review. *Id.* at 1426. The difference in procedural posture between direct federal review and habeas-based review makes *Perez* inapposite to this case.

*Symington*, 195 F.3d at 1086 n. 3.[2]

No Supreme Court authority dictates that a trial judge may not dismiss a juror if the judge knows the juror is the sole holdout. We have no power to impose rules on the state courts in our circuit. We cannot grant habeas relief unless the decisions of the state courts violated "clearly established federal law as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the evidence presented" in the state courts. 28 U.S.C. 2254(d).

## II.

Both the state trial court and the California Court of Appeal found that Juror 4 deliberately withheld important information on *voir dire*. The majority rejects these findings as unreasonable determinations of fact in light of the evidence presented under section 2254(d)(2). But in doing so, the majority ignores the record and fails to accord proper deference to the state courts.

The state courts found that Juror 4 wrongly withheld significant information in two main areas. First, the state courts found that Juror 4 wrongly withheld that she grew up and raised her children in the neighborhood where the murder in question was committed. Second, the state courts found that Juror 4 wrongly withheld that both of her sons had been affiliated with the murder victim's gang and that she harbored negative feelings about the police.

The following question was asked of all prospective jurors on *voir dire:*

> Is there anyone who is *familiar with* that location [where the murder was committed] because you work there, live there, had some—your job brings you to [that] location, you repair phones in that location, whatever it is, you are *somehow aware and know that location?*

(Emphasis added). Juror 4 grew up in the neighborhood in question. She brought up her children in that neighborhood. But she did not respond to this question. It was perfectly reasonable for the trial court and the Court of Appeal to find that a juror who was raised and who raised her children in the neighborhood in question was "familiar with" and "somehow aware" of the neighborhood. The state courts determined that Juror 4 was dishonest during *voir dire* because she stayed silent when the question was asked. The courts concluded that Juror 4 should have spoken

**2.** While *Symington* overturned a wire fraud conviction to safeguard a *federal* criminal defendant's right to a unanimous jury decision, the Federal Constitution does not guarantee a *state* criminal defendant the right to a unanimous verdict. *See Johnson v. Louisiana,* 406 U.S. 356, 369–77, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) (Powell, J., concurring in the judgment) (Justice Powell's opinion is current law). The rule in California that only a unanimous jury may render a verdict in a criminal case derives from the state constitution. *See* Cal. Const., art. I, §§ 7, 16; *People v. Superior Court (Thomas),* 67 Cal.2d 929, 932, 64 Cal. Rptr. 327, 329, 434 P.2d 623 (1967). It puzzles me that the majority imposes a dubious rule of constitutional criminal procedure to protect a right which the petitioner does not possess under the Federal Constitution.

up and told the judge she grew up in the neighborhood. Nothing about this finding strikes me as "unreasonable."

The majority, however, maintains that Juror 4 fully answered the questions posed to her and that the state courts' contrary findings were not just clearly erroneous but were "unreasonable." *See Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 1174, 155 L.Ed.2d 144 (2003) (defining "unreasonable" in section 2254(d)(1) as "more than incorrect or erroneous"). The district court theorized that since the question was phrased in the present tense, Juror 4 was honest—she "had not lived in that area for twenty-five years and had not even been to the area in over twenty years." But the district court and the majority overlook that a person may be "familiar" with a place even though she has not lived there in twenty years. This is especially true when a person grew up in that place and raised her children there.

The hyper-technical parsing of language reflected in the majority's "present-tense argument" is not what is contemplated on habeas review. The state judge was the one who asked the question, and she was in the best position to know who should have answered the question. Even if I believed that Juror 4 had no obligation to respond to the question, there is nothing "unreasonable" about the state courts' finding to the contrary. 28 U.S.C. § 2254(d)(2).

In fact, the reasoning employed by the United States Supreme Court in a similar case closely parallels the state courts' reasoning. In *Williams v. Taylor,* 529 U.S. 420, 440, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000), a habeas petitioner claimed he was entitled to an evidentiary hearing regarding juror bias because a woman failed to respond to the following question posed during *voir dire:* "Are any of you related to the following people who may be called as witnesses?" A juror's ex-husband was among the witnesses named. Like Juror 4 here, the juror in *Williams* explained that she did not answer the question because she did not consider herself " 'related' to [her ex-husband] in 1994[at *voir dire* ].... Once our marriage ended in 1979, I was no longer related to him." *Id.* at 441, 120 S.Ct. 1479. Like the majority here, the government insisted that the juror was honest because the questions were phrased in the present tense. But a unanimous Supreme Court rejected this argument, stating that "[e]ven if the juror had been correct in her technical or literal interpretation of the question relating to [her ex-husband], her silence ... could suggest to the finder of fact an unwillingness to be forthcoming ..." *Id.* The Court held that the petitioner was entitled to an evidentiary hearing on whether the juror was biased. *Id.* at 442, 120 S.Ct. 1479. I cannot understand how the state courts acted unreasonably when they interpreted the facts in this case as all nine justices of the Supreme Court interpreted a comparable set of facts in *Williams.*

The state courts also found that Juror 4 wrongly withheld information about her sons' former gang affiliations and her feelings about the attitudes of police officers. During *voir dire* the judge instructed the prospective jurors to "tell us more than you think we want to know," and asked all the jurors:

> Do you live or work in an area where there is open gang activity? ... Do you have any close friends or family members who are gang members?

After asking individual jurors specific questions about gang activity, the court addressed all the prospective jurors:

> Is there anyone who has a different opinion on that issue, that gang membership makes it impossible for that particular gang member to be an honest citizen? ... *Anyone else have any thoughts on the subject?*

(Emphasis added). In dismissing Juror 4 from the panel and denying the defense motion for a new trial, the trial judge noted that much of *voir dire* had been devoted to the subject of gangs. She found that Juror 4 should have told the court that her sons had been associated with a gang:

I did a lot of *voir dire* on gangs. It was real obvious that that was an important thing. . . .

I explained why we were asking all of these questions. I told them that I wanted them to tell us more than you think we want to know. So I essentially made it clear that they should err on the side of telling us more than less. And I also said: If you suddenly realize that there is something you have forgotten and now it is coming to your mind, we ask you to bring that to our attention.

I asked: Do you have any close friends or family members who are gang members? And although her sons were technically not gang members, it seems that the factor that she used to live in that area and I've already asked if you were familiar with that area and her sons used to claim association with a gang because there was gang activity in that area and they needed to, it seems to me those two questions would have prompted a candid juror to answer "yes." Yet she did not come forward and respond to that inquiry, either.

I also asked if "there is anyone with expertise in the area of gangs?" Now, I wouldn't go so far to say she has expertise, but certainly in the jury deliberations, . . . in her own words, she said, "I'm simply saying a lot of times in that neighborhood it is already assumed that you are a gang member because you are—you live in that neighborhood." So she is giving her expertise on . . . how living in that neighborhood affects people. . . .

Just to complete my reasoning, she also at another point—this is pursuant to Juror No. 3 when the other jurors were discussing the police tactics in that neighborhood. When pressed about whether she had such an experience in the neighborhood she said: sure I have seen this happen before.

The trial judge's findings of fact here were completely reasonable, especially considering that she presided over *voir dire*. *Cf. United States v. Alston*, 974 F.2d 1206, 1212 (9th Cir.1992) ("Circuit judges, reading the dry pages of the record, do not experience the tenor of the testimony at trial. The balance of proof is often close and may hinge on personal evaluations of witness demeanor."). The record discloses that the trial judge carefully considered whether to dismiss the juror and did so only after a thoughtful analysis of the situation, reasonably taking into account the discrepancy between Juror 4's silence during *voir dire* and her statements during deliberations. I do not know what more my colleagues expect from a judge faced with this difficult situation. Even if the trial judge's findings here were not correct, they were certainly not "unreasonable." 28 U.S.C. § 2254(d)(2).

The California Court of Appeal commented:

[T]he court asked all panel members whether any of their family members "are gang members." Had this been the only question on the subject of gangs, a prospective juror might properly have relied on the questions' present tense as ground for failing to advise the court that her sons had *previously* been gang members, or at least identified themselves as such. However, in context, and given the court's invitation to the juror candidates to be forthcoming . . . its refrain of have you *"ever"* questions, and its open ended final gang

question to the panel, "anyone else have any thoughts on the subject," Juror No. 4 was fairly called on to disclose her sons' prior gang contacts, and her feelings about police attitudes toward suspected gang members. Had she done so, follow up examin[ation] likely would have revealed her concern that police unfairly accuse suspected gang members, prompting a prosecution challenge. *People v. Sanders,* No. B117932, slip op. at 8 (Cal.Ct.App. March 3, 1999) (emphasis in the original). Far from being unreasonable, this interpretation of the facts is quite sensible.

The district court, and now this court, pay minimal deference to the factual findings made by the state trial court and the California Court of Appeal. Yet on habeas, those findings are presumed correct unless they are rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e). For the petition to be granted, the findings must additionally be "unreasonable in light of the evidence presented." 28 U.S.C. § 2254(d)(2).[3]

It is apparent that the district court and this court have engaged in a *de novo* review of the state courts' findings of fact. Not only is this especially inappropriate in a habeas case, but we would not conduct such a review of factual findings even on a direct appeal from a federal criminal conviction—where federalism and comity concerns are non-existent. *See United States*

*v. Matta–Ballesteros,* 71 F.3d 754, 766 (9th Cir.1995) (this court reviews a district court's factual findings relating to juror misconduct for clear error).

### III.

After determining that Juror 4 withheld significant information on *voir dire,* the state trial judge excused the juror for two reasons. First, she found that the prosecutors would have challenged Juror 4 if they had known of the withheld information. Second, the judge found that Juror 4 was "prejudiced" by her past experiences living in the neighborhood where the murder in question was committed.

The district court rejected the first reason, stating that the trial judge erred because "[t]he [only] relevant inquiry is whether Juror 4 concealed responsive information on *voir dire* and, if so, whether that indicated prejudice in fact or by implication." But the district court cited no case holding that it is impermissible to dismiss a juror because the prosecution would have challenged the juror if the juror had been forthright. This is not surprising. The Supreme Court has never held or implied that such a proposition exists as a matter of federal constitutional law. And in fact, I can think of no reason why it would be unreasonable to dismiss a juror whose dishonesty deprived the prosecution of its right to challenge the juror peremptorily or for cause.[4]

---

**3.** The majority ventures that "not only was Juror 4's interpretation of the questions on *voir dire* reasonable, but an independent review of the record demonstrates that, by all measures, it was the correct one." Maj. Op. at 949. But section 2254(d)(2) does not ask if *Juror 4's* interpretation was *reasonable;* it asks if the *state courts'* interpretation was *unreasonable.* And even if "an independent review of the record demonstrates" that Juror 4's interpretation "was the correct one," this is not relevant to a habeas analysis. Our jurisdiction in state habeas cases is limited to

determining whether the state courts' findings were unreasonable, not incorrect. *See Andrade,* 123 S.Ct. at 1175 (holding that the writ may not issue merely because a federal court finds that a state court's decision was "erroneous[] or incorrect[]").

**4.** The majority's affirmance of the district court's reasoning similarly fails to cite any relevant authority. *McDonough Power Equip. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), is not on point. There, the Supreme Court held that a party in a civil suit may not be granted a new trial on the

The Sixth and Fourteenth Amendments guarantee a state criminal defendant accused of a non-petty offense the right to a fair trial by an impartial jury. *See Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The Supreme Court has recognized that the prosecution, too, has an interest in a fair trial by an impartial jury. "[T]he Government, as a litigant, has a legitimate interest in seeing that cases in which it believes a conviction is warranted are tried before the tribunal [i.e., a jury] which the Constitution regards as most likely to produce a fair result." *Singer v. United States,* 380 U.S. 24, 36, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). When the government is deprived of an opportunity to challenge a juror, the government's legitimate interest in a fair trial is undermined. I can see no reason why it violates the defendant's rights for a court to dismiss a juror because that juror's dishonesty deprived the prosecution of knowledge which might have led it to challenge the juror.[5]

Even if I could come up with a reason, there is absolutely no Supreme Court authority which suggests that a criminal defendant's rights are denied when a juror is dismissed on these grounds. A federal court may grant a writ of habeas corpus to a state prisoner under section 2254(d)(1) only if his conviction resulted from a decision that was contrary to or involved an unreasonable application of "clearly established federal law as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

There was nothing unreasonable about the trial court's factual finding that the prosecution would have challenged Juror 4 had she disclosed the information that she was called upon to disclose. Although the prosecution did not challenge Juror 4 after she said that her grand-nephew may have been murdered by gang members, the trial court reasonably determined that the additional information would have led the prosecutor to use a peremptory challenge on Juror 4. Neither of the two prospective jurors who admitted familiarity with the neighborhood in question made it onto the jury. Given that Juror 4 grew up in the neighborhood, claimed that her sons had been harassed by the police, admitted that her sons had been affiliated with the gang of the murder victim, and expressed the view that police officers assumed that all young men in the neighborhood were members of gangs, it was not "unreasonable" for the trial judge to conclude that the prosecution would have challenged Juror 4 if it knew the full story. 28 U.S.C. § 2254(d)(2).

Nor were the state court findings regarding Juror 4's bias unreasonable. The trial judge stated that although she disagreed with the jury foreperson's allegation that Juror 4 was not deliberating in good faith, she was persuaded that Juror 4 was "prejudiced":

grounds that a juror was dishonest on *voir dire* unless it can prove both that the juror failed to answer honestly a material question and that an honest answer would have provided the prosecution with a valid basis to challenge the juror for cause. *Id.* at 556, 104 S.Ct. 845. This standard was met here, as I explain in this section of my dissent. Moreover, the Court in *McDonough Power* did not purport to interpret any provision of the Constitution, but relied on Federal Rule of Civil Procedure 61 and the harmless-error statute, 28 U.S.C. § 2111. *Id.* at 553–54, 104 S.Ct.

845. It is highly ironic that the majority cites to the portion of *McDonough* that deals with "the important end of finality" in the trial process.

**5.** The majority asserts that "any failure by the prosecution to discover information regarding Juror 4 ... was due to its own lack of diligence ..." Maj. Op. at 950. The majority elaborates no further, but if it means that prosecutors ought to seek information about prospective jurors outside the context of *voir dire,* I disagree.

She may not believe she's prejudiced, but I believe that given the life experiences that she's now disclosed that she failed to disclose during *voir dire* that she is.... [S]he used her experience from living in that area and from having her sons who have had to associate with gangs to get by in that area, she brought all that into the jury deliberations. And that was apparently very important to her in her perspective on this case.[6]

The California Court of Appeal affirmed the trial court's finding:

[Juror 4] stated during deliberations that she *grew up in the area* and indeed *that her sons had been harassed in that area by police because of their claimed gang affiliation.* And, she apparently questioned key evidence against appellant precisely because of her feelings about the way polic[e] had treated her sons. The evidence amply supported the inference drawn by the trial court that Juror 4 deliberately withheld this information, and that she was biased.

*Sanders,* No. B117932, slip op. at 8–9 (emphasis in the original). This analysis is entirely reasonable. The majority errs by concluding otherwise.

### IV.

The courts of California have consistently been willing and able to interpret the Federal Constitution, and their own constitution, in a manner protective of individual rights. The state jurists involved in this case rendered thoughtful and sensible judgments, acting in conformity with the tradition of respect for individual rights established by their predecessors and colleagues.

Today's majority, however, sweeps aside California's system of justice—with a weak opinion filled with flawed reasoning—and imposes upon the state the burden of using its notoriously limited resources to re-try the petitioner.

Because this murder conviction did not result from an objectively unreasonable application of federal law or an unreasonable interpretation of the facts, the district court should be reversed and the petition denied.

I respectfully dissent.

---

6. Contrary to the majority's assertion, the trial judge never "made a preliminary determination that Juror 4 was partial, objective and did not hold impermissible bias." Maj. Op. at 949–50. Rather, the judge stated that her "tentative [ruling] is that [Juror 4 is] not doing anything inappropriate." After hearing argument, the judge reconsidered her tentative ruling. I cannot understand why the majority faults the judge for not standing by her tentative ruling. Keeping an open mind is a virtuous quality in a judge.