**Thalia BROWN, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 02–CM–531.

District of Columbia Court of Appeals.

Argued Feb. 5, 2003.

Decided March 13, 2003.

---

Jonathan P. Willmott for appellant.

Lisa H. Schertler, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and

John R. Fisher, Roy W. McLeese, III, Jeffrey W. Bellin, and Ann H. Petalas, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and FARRELL and WASHINGTON, Associate Judges.

FARRELL, Associate Judge:

A jury found appellant guilty of one count each of distributing marijuana and possessing marijuana with intent to distribute. The sole question on appeal is whether the trial judge abused her discretion when, after the jury had begun deliberating, she (a) dismissed a juror upon finding that he had refused to take part in the deliberations and (b) allowed a jury of eleven to continue to verdict. Although the issue brings into focus once more the particular dangers of removing a juror "for just cause" during jury deliberations, *see* D.C.Code § 16–705(c) (2001); *Shotikare v. United States*, 779 A.2d 335 (D.C.2001), we find no abuse of discretion in the trial judge's careful application of the statute, and affirm.

## I.

Along with a codefendant, Bryant, appellant was tried on two counts of distributing marijuana—first to undercover police officer Johnson, then to undercover officer Ashby—and one count of possessing marijuana with intent to distribute. Bryant was acquitted on all charges, and the jury ultimately acquitted appellant of the distribution to Ashby, but found him guilty of the other two charges. As appellant makes no challenge to the sufficiency of the evidence, the facts relating to the crimes need not occupy us.

The facts that are relevant begin after the jury started its deliberations, having been reminded by the judge of its "duty to follow the law" as stated by the court and to render a decision "solely on the evidence." Somewhat less than two hours later, the judge received a note from the foreperson, Juror Seven, stating that the jury had reached a verdict on defendant Bryant but that "[w]e cannot come to a unanimous agreement on the 3 counts against Ms. Brown for reasons unrelated to debate about the evidence." After accepting the verdict as to Bryant and discussing the jury note with counsel, the judge instructed the jury simply to continue deliberating, but reminded it of "the grounds that you are to use in reaching a decision[: c]onsidering the evidence, finding the facts and basing your decision on the facts that you find and any reasonable inferences that follow from those facts."

Fifteen minutes after resuming deliberations, the jury sent out a second note signed by Juror Seven, stating: "The issue we have is that of juror nullification. Because of this we are unable to come to a unanimous decision on the 3 counts against Ms. Brown." The jury was excused for the night. The next morning the judge discussed the matter with counsel and crafted a second supplemental instruction, more elaborate than the first, stating in relevant part:

> Let me remind you that each of you took an oath to render a true verdict based on the law and the evidence in this case being fair to both parties.
>
> As jurors, you have a solemn responsibility to act in accordance with that oath.
>
> You must put aside any preconceptions or personal beliefs or biases and decide this case solely on the evidence presented here in Court, the inferences that follow from that evidence and the law as I have stated it to you.
>
> Each of you must decide the case for yourself.

But, do so only after an impartial consideration of the evidence with your fellow jurors.

You should not surrender your honest convictions about the weight of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of reaching a verdict.

However, after finding the facts, you must follow the law as I have set it out in my earlier instructions.

Our system of justice depends on the willingness of each juror to follow the law so that each person is treated equally in accordance with the laws that have been adopted in our community.

You have sworn to follow the law and it is your duty to do so.

So, with those instructions, I would ask that you retire to the jury room and continue with your deliberations. Thank you very much.

Twelve minutes after this instruction was given, however, the jury foreperson sent a third note to the judge, stating: "There is one juror who is unwilling to participate in the deliberation process." Appellant's counsel moved for a mistrial, which the judge denied, and the discussion moved—in the judge's words—to "the difficult question" of how the court should determine what, if anything, was blocking the jury's deliberations while "not appearing in any way to be coercive" and without "getting into the deliberations of the jurors." Ultimately, the judge gave the jury the following third supplemental instruction:

You have sent us a note earlier stating that one juror was unwilling to participate in the deliberative process.

It is your responsibility as jurors to judge this case based only on the evidence and the testimony presented in the courtroom.

It is your obligation not just to argue and to talk at one another but to talk to one another and to listen to what is said. That means that you must approach your responsibilities here with an open mind, not a closed mind.

As I said earlier, each of you must decide the case for yourself. But, do so only after an impartial consideration of the evidence with your fellow jurors. You should not surrender your honest convictions about the weight or the effect of the evidence solely because of the opinions of your fellow jurors or merely to reach a verdict.

However, you are bound by the oath that you have taken to follow the Court's instructions.

*If any juror believes for reasons of conscience or otherwise that that juror is unable to follow any of the legal instructions that I have given to you or is unable to continue to deliberate, that juror should send me a note and so advise me.*

However, do not tell me in any such note how you stand on any of the charges or the issues before the jury for consideration. I would ask you to return and continue your deliberations. Thank you. [Emphasis added.]

Immediately thereafter, Juror Three sent a note to the judge stating, "I cannot reach a verdict based on the evidence presented." Concluding that this juror must be the juror referred to in the preceding notes, the judge decided that limited inquiry was necessary to determine whether Juror Three's inability to "reach a verdict" was "based on the evidence presented," as his note stated, or was a matter of "refusing to deliberate or . . . to follow instructions," as the foreperson's successive notes had implied. The judge first summoned the foreperson (Juror Seven) and, while telling him that she did not "want to know

anything about the positions of the jurors on the case," asked him whether any juror had stated that "they would not follow the law or something like that." Juror Seven answered that, "[w]hen we first gathered to discuss and to deliberate the various counts, this particular juror [Juror Three] said I don't care what the case is about. I don't care what the evidence is[;] ... he wanted to protest, to use this as a forum to protest the way that Congress treats the District of Columbia." As the deliberations progressed and the other jurors asked Juror Three if he wanted "to contribute to the discussion," he replied "No. My mind is made up." Suggestions that there were "more effective forums" in which for him to voice his political views elicited "no change in his point of view."

The judge then summoned Juror Three and questioned him as follows:

> Court: ... I guess your note was in response to instructions that I gave earlier about letting me know if you could not follow the law or if you could not continue to deliberate.
>
> So, I want to know why or whether you feel that you can follow the law in this case?
>
> Juror: I'm just exhausted.
>
> Court: Have you been participating in the deliberations?
>
> Juror: Yes.
>
> Court: I guess that I need to ask you again even though you are exhausted, whether you are able to follow the law?
>
> Juror: I think so.
>
> Court: And even though you are exhausted, are you willing to continue to participate in deliberations?
>
> Juror: No, ma'am.
>
> Court: Can you just tell me why you are not willing to continue to participate in deliberations?

> Juror: Because I don't have any more energy.
>
> Court: Sir, if we were to break at this time and come back tomorrow, would that resolve this problem?
>
> Juror: No, ma'am.
>
> Court: About the energy?
>
> Juror: No, ma'am.
>
> Court: Why do you feel that it would not do so, sir? Why would it not resolve the problem?
>
> Juror: Because I'm just emotionally and mentally exhausted.

The inconsistency between the foreperson's account and Juror Three's assertion that he had "been participating in the deliberations" and thought he could follow the law convinced the judge that the other jurors needed to be queried as well. In numerical order, therefore, and out of the presence of the other jurors, the judge told each juror that she did not want to know anything about "the juror's position ... on the issues in the case," but rather, from what each had observed, "whether everyone is participating in the deliberations and attempting to follow the law as I have stated it." Of the remaining ten jurors, eight replied unequivocally that Juror Three had refused to take part in the deliberations regarding appellant for reasons having "nothing to do with the evidence" (Juror Eight). Instead, Juror Three had said "he was protesting" (Juror Four); was "attempting to make a political statement" (Jurors Nine, Twelve, and Thirteen); and for this reason was "not interested in debating the merits of the case at all" (Juror Eleven) or "would not follow [the law] under [any] circumstances" (Juror Five). Juror Two's responses tended in the other direction, but uncertainly:

> THE COURT: I ... want to know whether from what you have seen in the

jury room, ... everyone is attempting to follow the law and to participate in the deliberations?

THE JUROR: Yes.

THE COURT: Yes?

THE JUROR: Yes.

THE COURT: Are there any jurors who you feel are not considering the evidence and participating based on as I instructed you all to do?

THE JUROR: Yes. Everyone did say something.

THE COURT: Everyone is saying something?

THE JUROR: Yes, they had something to say.

THE COURT: Is everyone trying to follow the law?

THE JUROR: Yes, I think so.[1]

Following this inquiry, the judge heard argument from counsel and then dismissed Juror Three, exercising her authority under D.C.Code § 16–705(c) and Super. Ct. Crim. R. 23(b):

I think that based on this inquiry, ... the evidence would meet even ... the beyond a reasonable doubt standard, that Juror Number 3 has not participated in the deliberations in Ms. Brown's case and that he has stated in the jury room that he is making a political statement and that he has not at any point talked about the evidence in this case.

As she subsequently explained,

I ... found all of the jurors except for juror Number 3 to be credible. That even includes Juror Number 2 who said that she thought that everybody was doing their best. I have no reason to think that she in any way was lying[;] ... that was her view of what she was

seeing. All of the rest of the jurors ... were consistent in their assessments of what was going on. Everything in their manner and in the way they described things seemed to me quite credible.

The broad consensus of the jurors, the judge reiterated, was that "Juror Number 3 had not said anything about the evidence and did not base any of his statements to the jury on the evidence," but "instead on the political reasons [he stated]." This refusal to follow his oath, she concluded, constituted "extraordinary circumstances to excuse [him] for just cause."

## II.

D.C.Code § 16–705(c) provides:

The jury shall consist of twelve persons, unless the parties, with the approval of the court and in the manner provided by rules of the court, agree to a number less than twelve. Even absent such agreement, if, due to extraordinary circumstances, the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court, a valid verdict may be returned by the remaining eleven jurors.

As this court stated in *Shotikare, supra,*

[w]hen the occasion [addressed by the second sentence of the statute] arises, two distinct issues are presented for the trial judge to decide: whether to excuse a juror, and if so, whether to require the remaining jurors to continue deliberating or, alternatively, to declare a mistrial. These are discretionary decisions subject to review for abuse.

779 A.2d at 343.

### A.

■ The authority to excuse a juror during deliberations "is to be exercised

---

1. Juror One stated that everyone had been trying to follow the law "except for the one person," but as to whether that person "was willing to consider the evidence," could say only: "I don't know. Well, I guess. I don't know. I can't really say."

with caution," *id.*, for reasons we arrayed in *Shotikare* and that are readily apparent. Although the presence of a juror incapable of or unwilling to deliberate and decide a case on the evidence undermines the fairness of a trial,[2] excluding a juror at this "particularly sensitive stage of the trial," *United States v. Stratton*, 779 F.2d 820, 832 (2d Cir.1985), presents distinct risks both to the defendant's right to jury unanimity in criminal cases and to the secrecy of jury deliberations—"the cornerstone of the modern Anglo–American jury system." *United States v. Thomas*, 116 F.3d 606, 618 (2d Cir.1997). In *Shotikare*, this court dealt with an application of § 16–705(c) on relatively uncomplicated facts: jurors there asserted, and the trial judge ultimately found, that a particular juror "had threatened to assault another juror without adequate provocation," thereby "intimidat[ing] jurors who were afraid of her, and ... paralyzing deliberations." 779 A.2d at 342, 345. Inquiry by the judge into what had happened was obviously necessary, but also entailed a relatively low risk of "intrusion into the deliberative process," *Thomas*, 116 F.3d at 621: the intimidating conduct—assaultive words or actions by a juror—either had occurred or had not, and if so, it justified removing the juror without more.

■■■ The issue is considerably more complex in this case, where the complaint of other jurors is that a juror has refused to deliberate or follow the law. "Where ... a presiding judge receives reports that a deliberating juror is intent on defying the court's instructions on the law," the danger of "unduly breaching the secrecy of deliberations" by merely investigating the

reports is very real. *Id.* And yet inquiry is necessary, because "a presiding judge possesses both the responsibility and the authority to dismiss a juror whose refusal or unwillingness to follow the applicable law becomes known to the judge during ... trial." *Id.* at 617; *see also id.* at 616 ("[I]t would be a dereliction of duty for a judge to remain indifferent to reports that a juror is intent on violating his oath"). Without such an inquiry, "the court will have little evidence with which to make the often difficult distinction" between a juror "purposefully disregarding the court's instructions on the law" and a juror "who is simply unpersuaded by the Government's evidence." *Id.* at 621; *compare also United States v. Washington*, 227 U.S.App. D.C. 184, 189, 705 F.2d 489, 494 (1983) (verdict resulting from juror's refusal to follow the law is "lawless ... and ... an exercise of erroneously seized power") *with United States v. Brown*, 262 U.S.App. D.C. 183, 188, 823 F.2d 591, 596 (1987) ("a court may not dismiss a juror during deliberations if the request for discharge stems from doubts the juror harbors about the sufficiency of the government's evidence").

■■■ In *Shotikare*, echoing *Thomas* and other decisions construing the analogous federal statute, we balanced these competing considerations and affirmed the trial judge's authority to inquire into claims of juror misconduct during deliberations, while emphasizing that in doing so she "must proceed ... with caution, tact, and respect for the prerogatives of the jury." 779 A.2d at 345; *see also Thomas*, 116 F.3d at 621 ("[s]uch an investigation must be subject to strict limitations"). "The jurors' views of the case, the back

---

2. *See McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 554, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) (quoting *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)) ("[O]ne touchstone of a fair trial is an impartial trier of fact—'a jury capable and willing to decide the case solely on the evidence before it.'"); *accord, Johnson v. United States*, 701 A.2d 1085, 1090 (D.C.1997).

and forth among them concerning the evidence or the application of the law to the facts, their numerical division on the merits—all such things are off limits" to that inquiry. *Shotikare*, 779 A.2d at 345. Ultimately, " 'if the record evidence discloses any *reasonable* possibility that the impetus for a juror's dismissal stems from the juror's views on the merits of the case, the court must not dismiss the juror.' " *Id.* (quoting *United States v. Symington*, 195 F.3d 1080, 1087 (9th Cir.1999) (emphasis by *Symington* )).[3]

### B.

■ In this case, the trial judge responded with caution and tact to the reports that a juror was refusing to deliberate. In response to the first jury note, she merely instructed the jurors to continue deliberating while reminding them of the proper grounds they were "to use in reaching a decision." Replying to the second note, she reminded them of their "solemn responsibility to act in accordance with [their] oath" to follow the law, while "not surrendering [their] honest convictions about the weight of the evidence solely because of the opinion of [their] fellow jurors." When a third note revealed that the problem continued, the judge repeated this instruction and asked to be advised in

writing if any juror was "unable to follow any of the legal instructions ... or ... unable to continue to deliberate." And when Juror Three responded, she continued to act incrementally, first by questioning the foreperson and Juror Three individually—cautioning each that she did not "want to know anything about the positions of the jurors about the case"—and only then deciding that a voir dire of the remaining jurors was necessary. In conducting those interviews, she again took pains to insure that she learned nothing about any juror's views of the evidence, but only whether or not anyone had observed a juror refuse to follow the instructions or deliberate.

Appellant nevertheless argues that the judge abused her discretion at either of two points in the inquiry process. First, he asserts that she should not have reached the point of questioning jurors individually, because the written note she received from Juror Three had established on its face a reasonable possibility, *see Shotikare*, *supra*, that his unwillingness to deliberate further was "based on the evidence presented," *i.e.*, its deficiency. Yet, while that is certainly a reasonable understanding of the note, the judge was not obliged to accept it at face value. Besides the one-sentence note from Juror Three suggesting, somewhat equivocally,[4] that he

---

**3.** Appellant argues that, although the "reasonable possibility" standard was adequate in the *Shotikare* context which involved physical threats of harm, an even more demanding standard—"*any* possibility"—should govern cases like this where the court must probe a juror's thinking. *See Thomas*, 116 F.3d at 622 n. 11. But, as this case illustrates, the distinction between juror misconduct and a juror merely "defen[ding] her position" (Br. for Appellant at 21) can be elusive, counseling in favor of a single standard. Moreover, taken literally the phrase "any possibility" would prohibit dismissal of a juror when even a fanciful or wholly speculative possibility exists that his unwillingness to deliberate further was based on his view of the evidence. *See*

*United States v. Abbell*, 271 F.3d 1286, 1302 n. 14 & accompanying text (11th Cir.2001) (limitation on authority to remove must require a "tangible possibility, not just a speculative hope"). In adopting the "reasonable" possibility test employed by the *Symington* court, *Shotikare* implicitly agreed with that court that omitting the reasonableness qualification would result in a standard effectively barring removal of a juror in any case. *See Symington*, 195 F.3d at 1087 n. 5 ("Anything is possible in a world of quantum mechanics.") (citation omitted).

**4.** A permissible alternative reading of the note, even if less plausible, was that for "po-

was unpersuaded by the evidence, she had received three notes from the jury foreperson stating that a juror (by now concededly Juror Three) was refusing to take part in the deliberations. Her decision to briefly question at least those two jurors face-to-face cannot be said to have been an abuse of discretion. *See United States v. Reese,* 33 F.3d 166, 173 (2d Cir.1994) (whether and to what extent a juror should be questioned regarding the need for removal is within the trial judge's discretion). And when those interviews yielded the unequivocal confirmation of the foreperson that Juror Three "wanted to ... use this as a forum to protest" policy regardless of the evidence, versus Juror Three's equivocal response ("I'm just exhausted") to the question whether he could follow the law, it likewise was not an abuse for the judge to decide that additional interviews were necessary.

Appellant's secondary argument is that Juror Two, once questioned, provided all the confirmation the judge could fairly demand that Juror Three was possibly holding out because of his view of the evidence. Once more, however, we cannot say that on hearing from Juror Two the judge had no other reasonable course but to end the interview process. *Cf. Johnson v. United States,* 398 A.2d 354, 361 (D.C.1979) ("[d]iscretion signifies choice"). Putting aside the uncertainty in that juror's answers,[5] the judge was investigating assertions of juror impropriety that required her, within the bounds of the "reasonable possibility" standard, to decide which

among differing accounts of the juror's statements and intention to believe. For us to hold that in making that decision she could hear from some jurors but not all of them would unnaturally restrict the ability of the trial judge to gather relevant information on an issue of key importance to both parties.

We therefore sustain the trial judge's finding that "just cause" necessitated the dismissal of Juror Three. In essence she credited the broad consensus among the jurors that Juror Three had refused to participate in the deliberation process from the beginning.[6] We review that factual finding for "clear error," *see* D.C.Code § 17–305(a) (2001); *Abbell, supra* note 3, 271 F.3d at 1302–03 (applying clearly erroneous standard because "the district court is uniquely situated to make the credibility determinations that must be made in cases like this one: where a juror's motivations and intentions are at issue"); and we find no such error. Moreover, the judge made this finding "beyond a reasonable doubt," thus satisfying the "tough legal standard," *id.* at 1302, of "reasonable possibility" adopted by *Shotikare.*

■ Lastly, we reject appellant's argument that even if the juror was properly excused, permitting the remaining jurors to deliberate to a verdict rather than declaring a mistrial tended to coerce a verdict, and thus was itself an abuse of discretion. That the jury acquitted appellant of one of the distribution counts itself strong-

litical" or other reasons of principle the juror could not decide the case "based on the evidence presented."

5. Although Juror Two "thought" everyone was trying to follow the law, this together with the ambiguous statements that "[e]veryone did say something" and "they had something to say" could reasonably point the judge to the need to continue the interviews.

6. As the judge found, that Juror Three had joined the other jurors in acquitting codefendant Bryant is not inconsistent with the fact that, when deliberations turned to the evidence concerning appellant, the juror ceased participating to "mak[e] a political statement."

ly suggests that no atmosphere of coercion affected its continued deliberations. *See Davis v. United States*, 712 A.2d 482, 487 (D.C.1998) (in evaluating existence of coercion, "significant to note" that verdict was split). Moreover, contrary to appellant's argument, Juror Three was not a "dissident" who disagreed with the majority view and whose removal could thus send a chilling "message" to other possible dissenters. Given the judge's finding, which we have sustained, that the juror had refused to deliberate for reasons extrinsic to the evidence, removing him freed the jury to consider the case on the merits and perform their lawful function.

*Affirmed.*