James R. BRAXTON, Appellant,

v.

UNITED STATES, Appellee.

No. 99–CF–638.

District of Columbia Court of Appeals.

Argued June 2, 2004.
Decided June 24, 2004.

Phyllis Joan Baron, appointed by the court, for appellant.

Suzanne C. Nyland, Assistant United States Attorney, with whom Roscoe C.

Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, and Amanda Haines, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN, SCHWELB and WASHINGTON, Associate Judges.

SCHWELB, Associate Judge:

On May 6, 1999, following the dismissal of a juror during jury deliberations (and over a defense objection to the dismissal), James R. Braxton was convicted by an eleven-member jury of carrying a dangerous weapon outside his home or place of business,[1] possession of a prohibited weapon (sawed-off shotgun),[2] possession of an unregistered firearm,[3] and unlawful possession of ammunition for an unregistered firearm.[4] On appeal, Braxton contends that the trial judge erred in dismissing the twelfth juror. We affirm.

## I.

### THE TRIAL COURT PROCEEDINGS

A. *Voir dire and the trial judge's initial instruction.*

At Braxton's trial, which began on May 3, 1999, and ended on May 6, the prosecution presented evidence consisting primarily of testimony by police officers, which, if credited by the jury, established that during the early morning hours of May 6, 1998, Braxton was in possession of a loaded sawed-off shotgun which he discarded on a window ledge while being pursued by

the officers. Braxton presented no evidence.[5]

On the first day of the trial, during the jury selection process, and before any evidence was presented, the trial judge posed a number of questions to the *venire* in order to elicit any potential juror bias. One of the judge's inquiries was whether there is "any juror who believes that he would be inclined to give either more or less weight to the testimony of a witness just because that witness is a police officer." No member of the *venire* responded in the affirmative, and later on the same day, a jury was duly seated.

On May 4, 1999, the second day of the trial, after both parties had rested, the trial judge delivered her charge to the jury. Her instructions included the following:

> A police officer's testimony should be considered by you just as any other evidence in the case. In evaluating the officer's credibility you should use the same guidelines which you apply to the testimony of any witness. In no event should you give either greater or lesser weight to the testimony of any witness merely because that witness is a police officer.[6]

The jury began its deliberations at 11:20 a.m. on the following day, May 5, 1999.

B. *The first jury note and its aftermath.*

At 3:58 p.m. on May 5, the judge received a note from Juror No. 11 which read as follows:

---

1. D.C.Code § 22–3204(a) (1996), now codified at D.C.Code § 22–4504(a) (2001).

2. D.C.Code § 22–3214(a) (1996), now codified at D.C.Code § 22–4514(a) (2001).

3. D.C.Code § 6–2311(a) (1995), now codified at D.C.Code § 7–2502.01(a) (2001).

4. D.C.Code § 6–2361(3) (1995), now codified at D.C.Code § 7–2506.01(3) (2001).

5. On appeal, Braxton does not address the evidence in his case. His sole claim relates to the allegedly improper dismissal of a juror during deliberations. We therefore have no reason to discuss further the events of May 6, 1998.

6. *See Criminal Jury Instructions for the District of Columbia,* No. 2.26 (4th ed. 2002).

We have a juror who has made a statement about the police overall (most police are liars) and their credibility that is inconsistent with your questions you asked the group of 60.

The juror's reference to a question directed to the group of 60 was evidently to the inquiry relating to the weight to be given the testimony of a police officer, quoted above, which was posed by the trial judge as a part of the *voir dire.* Juror No. 11 was thus apparently alleging that a fellow juror had not been accurate in responding to the court's inquiries during the jury selection process.

Upon receiving the note, the judge commented that "if this jury ends up being a hung jury ... this will be the ninth hung jury that I have had on my calendar since January." The judge apprised counsel of some research that she had done on measures that could be taken to alleviate this problem, and she referred counsel to *United States v. Thomas,* 116 F.3d 606 (2d Cir.1997). The judge explained that in *Thomas,* the court had concluded that a "juror's purposeful unwillingness to apply the law, including stated intentions to in effect nullify, ... constitutes just cause for the dismissal of the juror from a deliberating jury under Rule 23 [(b) of the Federal Rules of Criminal Procedure]." The judge asked counsel for

suggestions ... as to how to proceed and address this situation. But it's clear to me that the jury is asking for help in dealing with a juror who they say, at least one juror says[,] is not following the instructions.

Braxton's attorney responded that "saying that most police officers are liars" is not the same thing as "saying I would never believe or disbelieve or always believe ... a police officer." Counsel argued that the note did not mean that any juror was refusing to follow instructions. Counsel suggested "that the court reinstruct

them on the jury instruction for a police officer's testimony, the jury instruction for evaluation of testimony ... or in the alternative I would ask for a mistrial." The prosecutor agreed that the jury should be reinstructed regarding the appropriate evaluation of a police officer's testimony, and she also asked the judge to remind the jurors that, during *voir dire,* they had all represented that they could evaluate a police officer's testimony fairly.

The judge then gave the jury a lengthy reinstruction in which she focused on the jurors' duty to follow the law and on their obligation to abide by the court's instructions regarding the law. Specifically, the judge instructed the jurors that they must give neither more weight nor less weight to the testimony of a witness simply because that witness is a police officer. Overruling a defense objection, the judge concluded her reinstruction as follows:

THE COURT: And I also do not want to intrude into your deliberations, because what you do in the jury room is the jury's business. But it is my business to make sure that the jury follows the instructions. So let me ask is there a foreperson? ... And you're juror 13?

THE FOREPERSON: Yes.

THE COURT: What I would do is ask that the foreperson let me know in writing whether any juror is refusing to follow the court's instructions, and it's very important that all the jurors follow the court's instructions.

C. *The additional notes from the jury.*

At approximately 10:30 a.m. on the following day, the judge received three notes, each from a separate juror, regarding the issue previously raised by Juror No. 11. The first note, signed by Juror No. 10, read as follows:

Your honor,

We brought to your attention yesterday a juror who we believe did not report to you accurately her prior bias and negative prejudices of police officers. We are *more* convinced now of her inability to judge the facts and presented evidence fairly. This is not an assessment of her opinion, but an assessment of her capacity to judge fairly. Please advise.

(Emphasis in original.)

A second note, signed by the foreperson, stated:

As the foreman I have determined that a juror holds some prejudice against policemen and cannot decide the case from a fair consideration of the evidence. Thus, we are not able to reach a unanimous verdict.

Finally, in a third note, Juror No. 808 reported that,

[w]e have an unqualified juror in our midst, unable to come to a decision based on the evidence presented to us.

In response to these notes, Braxton's attorney made an oral motion for a mistrial. She also objected to "any further inquiry, either of that particular juror ... or of the foreperson or of the jurors as to the way that they are viewing the evidence, their discussions, [a]s an improper invasion of the jury room." The prosecutor disagreed, and the judge, declining to order a mistrial, summoned the foreperson for *voir dire* by the court. The following colloquy ensued:

THE COURT: [B]ased on your note, is the juror refusing to return a verdict based on a dispute or a disagreement about the sufficiency or the weight of the evidence, or is the juror refusing to follow the instructions in this case?

THE FOREPERSON: The instructions.

THE COURT: [W]hat makes you say that? ... I really don't wish to be informed about the details of the jury's deliberation, but what you are telling me is a conclusion .... [I]s there some information you can share with us that tells us why you reached that conclusion without intruding into your deliberations?

THE FOREPERSON: That's a difficult one.

THE COURT: It is difficult.

THE FOREPERSON: I concluded that based on the statements that the juror made regarding their experiences, the juror's experiences.

THE COURT: And is there -

THE FOREPERSON: Experiences outside of the courtroom.

THE COURT: And did the experiences that this juror related to you, did the juror make a statement about how those personal experiences would affect her assessment of the evidence no matter what?

THE FOREPERSON: Yes, that was clearly stated.

THE COURT: And when I say no matter what, what I meant was no matter what the government's evidence would have been.

THE FOREPERSON: Exactly.

Following this exchange, the judge invited counsel to pose further questions to the foreperson, but neither did so. Braxton's attorney reiterated that "I don't believe that the inquiry was appropriate to begin with," and she "oppose[d] the idea of asking jurors [about] statements made by a juror," characterizing such interrogation as an "invasion of the province of the jury."

The judge then invited counsel to express their views regarding whether the judge should question the juror who was allegedly refusing to follow instructions before excusing that juror. The judge voiced skepticism regarding the usefulness of

such questioning, and she referred to the individual as the "offending juror":

> Here the only thing I'm considering doing, but I question its utility, is bringing the offending juror in and inquiring from that juror what is going on, whether it is merely a disagreement about the strength, the weight or sufficiency of the government evidence or whether it is this bias that the juror had before the juror came into court.

> My hesitation about doing that is that a juror could say one thing and not be truthful in light of all of the evidence we have here from the other jurors, but I'll hear from counsel about whether I should bring that juror in.  ·  :

The defense attorney, having previously opposed *all* juror interrogation, stated that she "very definitely" objected to any questioning of the juror whose conduct was at issue. Without objection by either party to her proposal to proceed without propounding any questions to the juror who was the subject of the jury notes, the judge ruled that the juror who was the subject of the four notes should be dismissed.

The dismissal of the juror was then carried out without any disclosure to her by the court of the reason for her dismissal and without the juror being given any opportunity to be heard on the matter. The judge instructed the foreperson to return to the jury room and to point out to the courtroom clerk which juror was allegedly "refusing to deliberate based on the evidence." The judge directed the courtroom clerk to excuse the juror identified by the foreperson, to thank her for her services, and to advise the juror that she could contact chambers if she had any questions. The foreperson identified Juror No. 7 as the juror to be dismissed, that juror was excused, and the remaining eleven jurors were directed to resume their deliberations. Almost immediately thereafter, the jury returned its unanimous verdict; Braxton was found guilty of all counts of the indictment.[7]

## II.

## LEGAL ANALYSIS

▮▮▮  In criminal cases in the District of Columbia, "[t]he verdict shall be unanimous. It shall be returned by the jury to the judge in open court." Super. Ct.Crim. R. 31(a). The jury returning the verdict ordinarily consists of. twelve members. D.C.Code § 16–705(c) (2001); Super. Ct. Crim. R. 23(b). The applicable statute, however, provides as follows:

> The jury shall consist of twelve persons, unless the parties, with the approval of the court and in the manner provided by rules of the court, agree to a number less than twelve. Even absent such agreement, if, due to extraordinary circumstances, the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court, a valid verdict may be returned by the remaining eleven jurors.

D.C.Code § 16–705(c); [*Thalia*] *Brown v. United States,* 818 A.2d 179, 184 (D.C. 2003).

▮▮▮▮  The court's authority to proceed with a jury of eleven

> is to be exercised with caution, and only when "extraordinary circumstances" and "just cause" are present. When the occasion arises, two distinct issues are presented for the trial judge to decide:

---

7. The notes from the three jurors were received at 10:30 a.m. The verdict was returned at 11:40 a.m. The discussion between court and counsel, the dismissal of Juror No. 7, and the very brief further deliberation of the eleven-member jury were thus all completed in a total of seventy minutes.

whether to excuse a juror, and if so, whether to require the remaining jurors to continue deliberating or, alternatively, to declare a mistrial. These are discretionary decisions, subject to review for abuse.

*Shotikare v. United States,* 779 A.2d 335, 343 (D.C.2001) (citations omitted); *see also* [*Thalia*] *Brown,* 818 A.2d at 184 (quoting *Shotikare*).[8] "Where, as here, the question of managing a deadlocked jury arises in conjunction with the question of excusing a juror for cause, the trial court must exercise his or her discretion with especial care." *Shotikare,* 779 A.2d at 344.

■■ Moreover, in the present case, it was readily apparent, prior to Juror No. 7's dismissal, that she was a "holdout" juror. The note from the foreperson stated that because of the juror's alleged prejudice against police officers, "we are not able to reach a unanimous verdict." "To remove a juror because [she] is unpersuaded by the Government's case is to deny the defendant his right to a unanimous verdict." *Id.* (quoting *Thomas,* 116 F.3d at 621). Moreover, as we suggested in *Shotikare,*

> [i]t might be incumbent on the trial judge to grant a motion for a mistrial where, for example, the judge's inquiry into the conduct of the juror who is excused has revealed the juror's views on the merits or the juror's status as a holdout. For then the decision to remove the juror, however appropriate, would entail influencing the outcome of deliberations in a known direction. Moreover, in such a case the potential for coercion in returning the jury to deliberate would be heightened. The

consequent appearance (if not the reality) of a manipulated or coerced jury verdict might make declaration of a mistrial the only acceptable course.

779 A.2d at 347.[9]

At the same time, however, a judge may not sit idly by when he or she has been advised that a juror has declined to follow the law or comply with the court's instructions. As we recently explained in [*Thalia*] *Brown,* 818 A.2d at 185,

> "[w]here ... a presiding judge receives reports that a deliberating juror is intent on defying the court's instructions on the law," the danger of "unduly breaching the secrecy of deliberations" by merely investigating the reports is very real. [*Thomas,* 116 F.3d at 621]. And yet inquiry is necessary, because "a presiding judge possesses both the responsibility and the authority to dismiss a juror whose refusal or unwillingness to follow the applicable law becomes known to the judge during ... trial." 116 F.3d at 617; *see also* 116 F.3d at 616 ("It would be a dereliction of duty for a judge to remain indifferent to reports that a juror is intent on violating his oath"). Without such an inquiry, "the court will have little evidence with which to make the often difficult distinction" between a juror "purposefully disregarding the court's instructions on the law" and a juror "who is simply unpersuaded by the Government's evidence." 116 F.3d at 621.

In the present case, the judge had received, from the jury itself, information that a juror was refusing to abide by the court's instruction regarding the weight to

---

**8.** Both *Shotikare* and [*Thalia*] *Brown* were decided *after* the judge's ruling here, and the judge thus did not have the benefit of this court's reasoning in these cases.

**9.** But even holdout jurors may properly be dismissed for good cause. "The fact that the

trial judge knew that Robles was the sole juror holding out for an acquittal when he dismissed her does not invalidate his decision to excuse her from jury service." *Perez v. Marshall,* 119 F.3d 1422, 1427 (9th Cir.1997).

be accorded to the testimony of a police officer. Although the first note did not establish that juror misconduct had occurred, it suggested that a juror had not been forthright during *voir dire*. The information provided was certainly sufficient to warrant an inquiry, and the judge therefore acted well within her discretion in her initial response, which was a forceful reinstruction of the jury. Subsequently, and after the reinstruction, the information provided orally by the foreperson was consistent with the substance of the information provided in the four written notes— Juror No. 7 was unable, because of preconceived notions which were contrary to the court's instructions, to decide the case based on the evidence presented. Significantly, three of the notes were written after the reinstruction, which suggests that the judge's directive fell on one pair of deaf ears. There was thus substantial record support for the judge's finding that a juror was not carrying out her responsibilities appropriately.

Nevertheless, the circumstances of this case give cause for concern. The line between disbelieving *most* police officers and disbelieving the officers who testified in this case may not always be a clear one, and a juror may not be dismissed if it is reasonably possible that he or she simply disbelieved the witnesses in the case being tried, and was not adhering to some inflexible and impermissible prejudiced stance. *Cf. United States v. [Warren] Brown,* 262 U.S.App. D.C. 183, 189, 823 F.2d 591, 597 (1987). Juror No. 7 had been questioned during *voir dire,* and she had disclosed that her brother-in-law worked in the Internal Affairs Division of a Police Department, but had stated that she could evaluate the testimony of a police officer fairly. The judge disqualified this juror without hearing her side of the story, and even expressed skepticism in advance regarding whether the juror would respond truthfully. The procedure would, in our view,

have been substantially more balanced and fair if the judge had questioned Juror No. 7 (without any preconceptions as to her veracity), and if she had included that juror's perspective in her calculus; this would have assuaged the concern expressed by the court in *[Warren] Brown.* As we noted in *[Thalia] Brown,* although the judge has wide discretion as to whether and to what extent a juror or jurors should be interviewed, the ability of the judge in this kind of situation "to gather relevant information on an issue of key importance to both parties" should not be "unnaturally restrict[ed]," 818 A.2d at 187, even by the judge herself.

■ In this case, however, Braxton's attorney vigorously objected to any interview of Juror No. 7 by the court. Indeed, even on appeal, she makes no claim that the judge erred by not questioning Juror No. 7. Although "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the [c]ourt," Super. Ct.Crim. R. 52(b); *see also Outlaw v. United States,* 632 A.2d 408, 410 & n. 7 (D.C.1993), we are not prepared to hold that the judge's decision not to question this juror, when defense counsel emphatically opposed any such questioning, was "plainly" wrong, or that absent the court's intervention, *sua sponte,* "a miscarriage of justice would otherwise result." *United States v. Olano,* 507 U.S. 725, 735–36, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Indeed, in this case, any error in not interviewing Juror No. 7 was invited, and even if Braxton's attorney were complaining of it on appeal, which she is not, we would not entertain such a contention. *Cowan v. United States,* 629 A.2d 496, 502–03 (D.C.1993).

■ There being no information in the record contrary to the representations of the foreperson and of the three other jurors who wrote notes to the court, the allegations of these jurors stand uncontra-

dicted. Under these circumstances, and even though the evidence of juror misconduct was less than overwhelming, it was sufficient to preclude us from second-guessing the trial judge's finding that Juror No. 7 was refusing to follow the instructions of the court and that she was unwilling to decide the case based on the evidence. Accordingly, and not without some reluctance, we are constrained to sustain the judge's decision to dismiss this juror. Because no other issue has been raised on appeal,[10] Braxton's convictions must be, and they are hereby

*Affirmed.*

---

**10.** As previously noted, we stated in *Shotikare* that when a deliberating juror is accused of not properly discharging his or her responsibilities, the judge must decide not only whether to excuse that juror but also whether to declare a mistrial. In this case, declaration of a mistrial would not necessarily have been unwarranted, especially since it was readily apparent from the juror note written by the foreperson that Juror No. 7 was the sole dissenting or holdout juror. *See Shotikare*, 779 A.2d at 347. Here, the only juror who declined to credit the testimony of police witnesses was removed, and a guilty verdict promptly followed.

An examination of Braxton's brief, however, reveals that his counsel has not raised on appeal the issue whether the judge should have declared a mistrial after dismissing Juror No. 7. The sole questions presented in the brief are:

I. Whether the removal of the deliberating juror was for just cause, and if not;

II. Whether the trial court abused its discretion in removing a juror while the jury was in deliberation.

A claim not argued in the appellant's brief is waived. *In re Shearin*, 764 A.2d 774, 778 (D.C.2000). Moreover, in light of our decision in [*Thalia*] *Brown*, 818 A.2d at 187–88, in which we upheld the denial of a motion for a mistrial under comparable (though by no means identical) circumstances, we do not find plain error, especially when no claim of error with respect to the trial judge's failure to declare a mistrial has been asserted on behalf of the appellant.