COBB, Judge,
dissenting.
I respectfully dissent from the main opinion remanding this case to the trial court with directions to make findings of fact concerning Cole’s motion for a mistrial. For the reasons set forth below, I would reverse Cole’s conviction without prejudice.
A juror disqualified under § 12-16-60(a)(3), Ala.Code 1975, because he or she is mentally incapable of rendering satisfactory jury service, “may be properly challenged for cause.” Watters v. Lawrence County, 551 So.2d 1011, 1016 (Ala.1989), citing Ex parte Poole, 497 So.2d 537 (Ala.1986). Rule 18.4(e), Ala. R.Crim. P., states that challenges for cause “shall be made before the parties begin striking the jury.” However, the Committee Comments to Rule 18, Ala. R.Crim. P., recognize that situations arise after the striking of the jury which may require the removal of a juror for cause.
“If a juror were excused for cause upon a challenge arising after the juror had been sworn and there were no alternate available and the parties would not consent to trial by less than 12 jurors, the judge would have to declare a mistrial, but a retrial would not constitute double jeopardy.”
Rule 18, Ala. R.Crim. P., Committee Comments (emphasis added).
Likewise, § 12-16-231, Ala.Code 1975, provides for the discharge of a juror after the deliberation process has begun.
“If after the jury retire[s] one of them becomes so sick as to prevent the discharge of his duty or any other cause or accident occurs to prevent their being kept together for deliberation, they may be discharged.”
Section 12-16-231, Ala.Code 1975. (Emphasis added.)
As in a case where a criminal defendant challenges a petit juror after a verdict has been entered, “ ‘the initial inquiry is whether the disqualification was a ground for the juror being mandatorily excused as a petit juror, and, secondly, whether the defendant exercised due diligence to keep the unqualified venireman off the jury.’ ” Bradley v. State, 577 So.2d 541, 554 (Ala.Crim.App.1990)(quoting Lollar v. State, 422 So.2d 809, 811 (Ala.Crim.App.1982), in turn citing Beasley v. State, 39 Ala.App. 182, 185, 96 So.2d 693 (1957)). The record suggests that grounds for disqualifying C.P. from jury service can be found in § 12-16-60(a)(3), Ala.Code 1975.
“(a) A prospective juror is qualified to serve on a jury if the juror is generally reputed to be honest and intelligent and is esteemed in the community for integrity, good character and sound judgment and also:
[[Image here]]
“(3) Is capable by reason of physical and mental ability to render satisfactory jury service, and is not afflicted with any permanent disease or physical weakness whereby the juror is unfit to discharge the duties of a juror....”
Section 12-16-60(a)(3), Ala.Code 1975.
As the main opinion stated, the record from voir dire does not reflect that the venire panel of 30 members was questioned about mental ability, but the record suggests, and neither party contests the fact, that such a question was posed to the venire before the panel for Cole’s case was drawn. (See Vol. 1, page R. 6 and Vol. 2, page 4.) This query illicited no response from C.P. Indeed, it is unrealistic to expect a juror who may not be competent to serve on the jury because of a mental defect to recognize and inform the trial court of that fact. Thus, at this point in the proceedings, neither the trial court nor the de *857 fense was aware of any ground that would disqualify C.P. from jury service. However, I believe that once the trial court received notice from C.P.’s fellow jurors questioning C.P.’s mental ability to participate in jury deliberations, the trial court, either on its own motion or pursuant to the defense motion, was required to investigate the assertion.
Trial courts in other jurisdictions[3] faced with this situation have sought to determine the legitimacy of a claim that a juror is mentally unable to participate in deliberations. See, e.g., United States v. Walsh, 75 F.3d 1, 3-5 (1st Cir.1996)(eautioning both not to comment on merits of the case, trial court questioned foreperson and then juror suspected of being mentally unstable to participate in deliberations); United States v. Huntress, 956 F.2d 1309, 1312 (5th Cir.1992)(“Defense counsel requested an evidentiary hearing to examine [juror displaying mental problems] as well as the [juror’s] doctor, but the judge determined that his conversation [with juror’s doctor] provided a sufficient basis for excusing [the juror] from jury service. No eviden-tiary hearing was held.”); United States v. O’Brien, 898 F.2d 983, 986 (5th Cir.1990)(trial court spoke with juror’s physician and juror’s wife and verified that juror was mentally in no condition to continue as a juror).
By analogy, in a juror-misconduct case where a juror declines to follow the law or comply with the court’s instructions, courts have stated:
“[A] judge may not sit idly by when he or she has been advised that a juror has declined to follow the law or comply with the court’s instructions. As we recently explained in Brown v. [United States,] 818 A.2d [179] at 185 [(D.C.2003)],
“ ‘ “Where ... a presiding judge receives reports that a deliberating juror is intent on defying the court’s instructions on the law,” the danger of “unduly breaching the secrecy of deliberations” by merely investigating the reports is very real. [United States v. Thomas, 116 F.3d 606, 621 (2d Cir.1997)]. And yet inquiry is necessary, because “a presiding judge possesses both the responsibility and the authority to dismiss a juror whose refusal or unwillingness to follow the applicable law becomes known to the judge during ... trial.” 116 F.3d at 617; see also 116 F.3d at 616 (“It would be a dereliction of duty for a judge to remain indifferent to reports that a juror is intent on violating his oath”). Without such an inquiry, “the court will have little evidence with which to make the often difficult distinction” between a juror “purposefully disregarding the court’s instructions on the law” and a juror “who is simply unpersuaded by the Government’s evidence.” 116 F.3d at 621.’ ”
Braxton v. United States, 852 A.2d 941, 947 (D.C.2004). The Braxton court also noted that
“although the judge has wide discretion as to whether and to what extent a juror or jurors should be interviewed, the ability of the judge in this kind of situation ‘to gather relevant information on an issue of key importance to both parties’ should not be ‘unnaturally re *858 strict[ed],’ ... even by the judge herself.”
Braxton v. United States, 852 A.2d at 948 (quoting Brown v. United States, 818 A.2d 179, 187 (D.C.2003)).
Also by analogy, in a juror-misconduct case where a juror is believed to be too intoxicated to perform his duty as a juror, the trial court has held a hearing in chambers to question the juror. See Alabama Power Co. v. Henderson, 342 So.2d 323, 327 (Ala.1976).
A defendant has a right to a jury of “[tjwelve persons, who are impartial and who unanimously resolve disputed facts.” Clark v. Container Corp. of America, Inc., 589 So.2d 184, 196 (Ala.1991). Because I believe that the trial court erred by not investigating C.J.’s mental ability to deliberate, I believe that Cole was possibly denied his right to a trial by a jury of 12 persons. I also believe that would be unfair to both the jurors and the defendant to summon at this late date the jurors for a “minitrial” on C.J.’s ability to serve as a juror. I would not remand this case; I would instead reverse Cole’s conviction.

. Fed.R.Crim.P. 23(b) allows parties to stipulate with the approval of the court that less than 12 jurors may render a valid verdict. “The rule continues: 'Even absent such stipulation, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors.'” United States v. O’Brien, 898 F.2d 983, 986 (5th Cir.1990)(quoting Rule 23(b), Fed.R.Crim.P.).