**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| TERRY LEE BELL,<br>*Petitioner-Appellee*,<br><br>v.<br><br>DOMINGO URIBE, JR., Warden,<br>*Respondent-Appellant*. | No. 11-56768<br><br>D.C. No.<br>5:08-cv-01913-<br>JST-SS |
| NATALIE DeMOLA,<br>*Petitioner-Appellee*,<br><br>v.<br><br>JAVIER CAVAZOS, Acting Warden,<br>*Respondent-Appellant*. | No. 11-56771<br><br>D.C. No.<br>5:10-cv-00014-<br>JST-SS<br><br>ORDER AND<br>AMENDED<br>OPINION |

Appeal from the United States District Court
for the Central District of California
Josephine Staton Tucker, District Judge, Presiding

Argued and Submitted
August 5, 2013—Pasadena, California

Filed September 5, 2013
Amended January 21, 2014

Before: Richard C. Tallman, Richard R. Clifton,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Tallman

**SUMMARY**[*]

**Habeas Corpus**

The panel amended an opinion filed on September 5, 2013, denied a petition for panel rehearing, denied a petition for rehearing en banc on behalf of the full court, and ordered that no further petitions for panel rehearing or rehearing en banc will be entertained.

As in the original opinion, the panel reversed the district court's grant of a 28 U.S.C. § 2254 habeas corpus petition with instructions to deny petitioners' claims for relief and consider their remaining unresolved claims, and retained jurisdiction over future appeals.

Petitioners raised a Sixth Amendment challenge to the trial court's decision to excuse a juror for willful misconduct when the juror violated the court's instructions by conducting independent research that she presented to her fellow jurors during deliberations, and by asking them to rely on her expertise and specialized knowledge as a mental health expert. The panel first held that the presumption, that the California Court of Appeal adjudicated the federal claim on

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the merits despite not expressly addressing that claim, had not been rebutted. *See Johnson v. Williams*, 133 S. Ct. 1088 (2013). The panel next held that the California Court of Appeal decision upholding the juror's removal for misconduct was neither contrary to nor an unreasonable application of clearly established federal law.

In the amended opinion, the panel clarified its holding that the sentence did not violate the Eighth Amendment as cruel and unusual as to petitioner DeMola, a juvenile offender, because she was not sentenced to life without possibility of parole pursuant to a mandatory sentencing scheme that did not afford the sentencing judge to consider the specific circumstances of the offender and the offense, and because the record showed that the trial judge did make an individualized sentencing determination under a scheme that affords discretion and leniency. *See Miller v. Alabama*, 132 S. Ct. 2455 (2012); Cal. Penal Code § 190.5(b).

---

## COUNSEL

Kevin Vienna (argued), Supervising Deputy Attorney General, San Diego, California, for Respondents-Appellants Domingo Uribe, Jr. and Javier Cavazos.

Thaddeus J. Culpepper (argued), Pasadena, California, for Petitioner-Appellee Terry Lee Bell.

Mark R. Drozdowski (argued), Deputy Federal Public Defender, Los Angeles, California, for Petitioner-Appellee Natalie DeMola.

## ORDER

The opinion filed on September 5, 2013, is amended. The amended opinion is filed concurrently with this order.

With these amendments, the panel has voted to deny the petition for panel rehearing and the petition for rehearing en banc filed in appeal number 11-56771.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc in appeal number 11-56771 are **DENIED**. No further petitions for panel rehearing or petitions for rehearing en banc will be entertained.

## OPINION

TALLMAN, Circuit Judge:

The California Attorney General ("state") appeals the district court's grant of habeas relief under 28 U.S.C. § 2254 to California state prisoners Terry Bell and Natalie DeMola ("petitioners"). In granting relief, the district court concluded that the petitioners' Sixth Amendment rights were violated when the trial court removed for willful misconduct, in conformance with California Penal Code § 1089, the only juror advocating for acquittal.

The California Court of Appeal found that the juror was properly removed because she engaged in misconduct by: (1) offering her expert opinion on the petitioners' mental health, and (2) violating the court's instructions by consulting a dictionary in order to obtain a medical definition that she presented to her fellow jurors during deliberations. The district court relied on then controlling Ninth Circuit precedent, since reversed by the Supreme Court, to conduct a de novo review of the petitioners' federal habeas claims.

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we reverse and vacate the district court's order granting Bell and DeMola habeas relief. In assessing the habeas petitions filed by Bell and DeMola, the district court should have applied the deferential standard of review prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). We address the merits of the petitioners' claims for relief, based on the Sixth and Eighth Amendments and discussed herein.[1] We remand this case to the district court

---

[1] Remand to the district court to reconsider these claims in the first instance is unnecessary because there can be no additional factfinding by that court. Federal habeas review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). The parties have submitted, and we have reviewed, supplemental briefs and argument addressing the merits of these claims. Because the record is complete, we may resolve these claims on appeal rather than remanding for reconsideration. *See Ybarra v. McDaniel*, 656 F.3d 984, 992 n.3 (9th Cir. 2011).

After argument, counsel for DeMola—apparently sensing from our questioning that we would not affirm the district court's judgment in light of the Supreme Court's reversal in *Johnson v. Williams*, 133 S. Ct. 1088 (2013)—switched positions and tried to withdraw from appeal an Eighth Amendment claim that he had briefed and argued. We will not permit after argument a preemptive withdrawal of a claim that was fully raised,

to deny these claims, and to consider the remaining unresolved claims in the petitioners' 28 U.S.C. § 2254 habeas petitions.

I

On April 15, 2005, Bell and DeMola were convicted in Riverside County Superior Court of first degree murder, in violation of California Penal Code § 187, with special circumstances. On April 10, 2001, when DeMola was sixteen years old and Bell was seventeen, the pair, joined by a mutual acquaintance, murdered DeMola's mother. The jury concluded that the murder was committed while lying in wait, as defined under California Penal Code § 190.2(a)(15), and was intentional and involved torture, as defined under California Penal Code § 190.2(a)(18). On July 20, 2005, the trial court sentenced Bell and DeMola to life in prison without the possibility of parole.

Bell and DeMola contested the murder charge in a four-week-long jury trial, which commenced on March 3, 2005. At the close of evidence, the jury began several days of deliberations, which were interrupted by accusations of juror misconduct involving Juror No. 7.

On the fourth day of deliberations, Juror No. 12 informed the court, outside of the presence of her fellow jurors, that Juror No. 7 worked in the mental health field and had concluded that Bell and DeMola were suicidal and suffered from clinical depression. After the court admonished Juror No. 12 not to discuss "specifically what the jury has been

briefed, and argued before our court. Withdrawal at this stage would waste judicial time and resources already expended addressing this claim.

deliberating," Juror No. 12 stated that Juror No. 7 had "ma[de] a medical decision . . . [that was] not part of the trial . . . [a]nd she's making this as something that we should all be aware of, and it is swaying her inability, or ability, to make the decision one way or the other." The court heard arguments from the prosecution and defense regarding the propriety of dismissing Juror No. 7, but ultimately elected to "not . . . take further action right now . . . [and] to wait to see how it proceeds this morning."

That afternoon, the court received a note indicating that the jury was hung and could not reach a unanimous verdict. In response to the note, and in light of the allegations of misconduct, the court asked the jury foreman whether "Juror No. 7 [was] portraying herself as an expert in the mental health field and evaluating the evidence accordingly." At that time, the jury foreman answered in the negative and stated that other jurors had prevented Juror No. 7 from offering her mental health opinion. The court then instructed Juror No. 7 that "the deliberation process must be based upon the evidence introduced in the case[;] [a] particular juror can't use his or her expertise in evaluating the evidence because that individual never testified as an expert."

The court concluded that Juror No. 7 was properly deliberating and, after polling the jury, read a "dynamite" charge[2] instructing the jurors to continue deliberations. Prior to doing so, the court informed counsel that:

---

[2] A "dynamite" instruction, authorized under *People v. Moore*, 117 Cal. Rptr. 2d 715 (Cal. Ct. App. 2002), is comparable to the *Allen* charge sometimes given during deliberations in federal proceedings, described in *Allen v. United States*, 164 U.S. 492 (1896).

> Excusing a holdout juror is a very serious move that is disfavored by appellate courts, and I would certainly much rather try this case next Monday morning with a new jury panel rather than having a case reversed in four or five years. That's my unsolicited opinion. So I certainly wouldn't excuse a holdout juror, unless I was very satisfied that it was a clear indication of juror misconduct, which may or may not exist in this case.

Upon receiving the dynamite charge, three members of the jury informed the court of their frustration with Juror No. 7, one of them stating, "I feel with an alternate juror we could come to a unanimous decision." The court again declined to dismiss Juror No. 7 and instructed the jurors to resume deliberations.

Two days later, the jury submitted a note alleging that Juror No. 7 was indeed functioning as an expert and not as a deliberating member of the jury panel. The court convened a hearing in response to the note. The court again asked the jury foreman whether Juror No. 7 was "evaluating the evidence as an expert." In response, the foreman then stated "based on what was done last night, I'm going to have to say yes." The foreman explained that Juror No. 7 had returned home, compiled information from a dictionary and "from her profession" and presented the information to the jury, ultimately concluding that "one of the defendants" suffered from clinical depression. No such evidence had been offered at the trial.

When questioned by the court, Juror No. 7 admitted that she shared the definition of the term "depression" with the

jurors, as that term was defined in Webster's Dictionary. Juror No. 7 stated that "I just wanted the term that I could relate to the people. Just tell them, this is depression, and these are the things that happen with depression."

Another juror stated that Juror No. 7 "brought in materials. She had done research at home and brought in that paperwork. And that's what she used to make her presentation." Juror No. 9 confirmed that Juror No. 7 "was . . . presenting herself as a mental health expert in the presentation of her position." Juror No. 4 noted that Juror No. 7 "said that through her education, her experience, her clinical training, she went through and she analyzed in this manner and laid out what she thought was a reason in her mind as to why she would reach a certain verdict." One juror explained that Juror No. 7 drew "a diagram in the jury room with all this clinical information," relying on information contained in a notebook that she "brought in from home." Juror No. 1, a registered nurse, expressed doubt that the definition conveyed was derived only from Webster's Dictionary, instead stating "it looks like something out of a textbook." The court reviewed the notes that Juror No. 7 admitted to compiling at home, and concluded that "it doesn't appear that any of this would necessarily come from a simple dictionary." The court copied the notes Juror No. 7 had made and sealed them as a court exhibit for state appellate review.

After hearing arguments from counsel, the court noted that it had "admonished this juror two days ago that she could not act as an expert" and expressed disappointment that thereafter the juror went "home, d[id] her own investigation, reference[d] what she says is a dictionary[;] [s]everal of the other jurors said that she also reviewed data that she had at home." The court concluded:

> [I]t is quite clear . . . that this juror has violated the admonition and directive of this Court after she was told not to do it. It was a willful violation. It was willful misconduct. Based upon what she did, based upon her demeanor in court, and the way she answered my questions, this Court is finding that there is a demonstrable reality that this juror is unable to perform her function as a juror and follow the very clear directives of this Court and that she did engage in willful misconduct. And her presentation to the jury was a clear indication that she was attempting to persuade to this jury based upon her training and experience and information that she had collected outside of court. Pursuant to Penal Code section 1089,[3] the Court is now excusing this juror.

An alternate juror was empaneled, and within hours, the jury reached a unanimous verdict.

---

[3] California Penal Code § 1089 provides, in relevant part:

> If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefor, the court may order the juror to be discharged and draw the name of an alternate, who shall then take a place in the jury box, and be subject to the same rules and regulations as though the alternate juror had been selected as one of the original jurors.

II

Bell and DeMola unsuccessfully appealed their convictions to the California Court of Appeal and the California Supreme Court, arguing in part that the trial court's removal of Juror No. 7 denied the petitioners their "Sixth Amendment right[s] to a fair and impartial jury, as well as [their] right[s] to due process and [to] a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution."

In a reasoned opinion, the California Court of Appeal concluded that the removal was proper, noting that Juror No. 7 committed misconduct by: (1) "violating [the trial court's] instruction" to "not do any independent research, either on the internet or looking at legal books . . . or looking at a dictionary[;]" and (2) "acting as an unsworn expert witness," finding that "[t]here was ample evidence that Juror No. 7 was . . . asking the other jurors to rely on her expertise and specialized knowledge." The California Supreme Court unanimously, and without comment or citation to authority, affirmed the California Court of Appeal's opinion.

Bell and DeMola then sought habeas relief in the United States District Court for the Central District of California. On June 20, 2011, a magistrate judge issued a report and recommendation, concluding that Bell's petition should be dismissed with prejudice. Applying AEDPA deference, the magistrate judge found that:

> Juror No. 7's disqualification under Penal Code section 1089 was for good cause and did not violate Petitioner's Sixth Amendment rights. In addition, the record reflects that

there was no reasonable possibility that the
impetus for Juror No. 7's dismissal stemmed
from her views regarding the merits of the
case. *Cf. Williams v. Cavazos*, __ F.3d __,
2011 WL 1945744 at *15 (9th Cir. May 23,
2011).

On August 8, 2011, the magistrate judge consolidated the
federal habeas proceedings initiated by Bell and DeMola and
issued a revised report and recommendation, this time
concluding that habeas relief was warranted. In vacating the
prior report, the magistrate judge explained that a recent
appellate decision, "*United States v. Evanston*, __ F.3d __,
2011 WL 2619277 (9th Cir. July 5, 2011), and its discussion
of *Williams v. Cavazos*, __ F.3d __, 2011 WL 1945744 (9th
Cir. May 23, 2011), have caused this Court to *sua sponte*
reconsider its June 20, 2011 recommendation."

In light of *Williams v. Cavazos*, 646 F.3d 626 (9th Cir.
2011), the magistrate judge found that the California Court of
Appeal had failed to address the petitioners' Sixth
Amendment arguments and instead had limited its analysis to
whether dismissal was appropriate under California Penal
Code § 1089. Accordingly, the magistrate judge concluded
that AEDPA deference did not apply since no state court had
adjudicated the merits of the petitioners' constitutional
claims, and she proceeded to conduct a de novo review of the
disputed issues.

Applying the standard articulated in *Williams*, the
magistrate judge found that Juror No. 7's discharge violated
the Sixth Amendment because the record evidence disclosed
a "reasonable possibility that the impetus for [the juror's]

dismissal stem[med] from the juror's views on the merits of the case." 646 F.3d at 646. The magistrate judge noted that:

> [I]t was undisputed that Juror No. 7 was the lone holdout juror with a split of "11 to 1." . . . It was clear that the jurors' animus toward Juror No. 7 was based in large part on her disagreement with their view of the evidence. . . . [Therefore,] [e]ven assuming that the trial court had cause to remove Juror No. 7 because she "acted as an expert," the trial court "was not justified in *acting* upon that cause because there was a 'reasonable possibility' that the request for removal was directly connected to [Juror No. 7's] views on the merits." *Williams*, 2011 WL 1945744, at *15.

After conducting an independent review of the record, the magistrate judge recommended that the district court grant the habeas petitions filed by Bell and DeMola. On September 24, 2011, the district court adopted the amended report and recommendation and ordered the state to "either release Bell and DeMola or retry them within 120 days of the date of this Order." The state immediately appealed the district court's ruling and obtained an order staying retrial pending appeal.

III

While this appeal was pending, the Supreme Court issued a writ of certiorari and overturned our opinion in *Williams*, concluding that AEDPA deference should have applied when adjudicating Williams' habeas petition. *Johnson v. Williams*, 133 S. Ct. 1088 (2013). The Supreme Court held in *Williams*

that "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Id.* at 1096. The record before us establishes that the challenge to the removal of Juror No. 7 under California Penal Code § 1089 was intertwined with a Sixth Amendment due process challenge regarding the petitioners' right to a fair and impartial jury. As a result, we hold that the presumption articulated in *Williams* has not been rebutted and that the district court erred by finding that the California Court of Appeal overlooked the petitioners' Sixth Amendment claims.

The parties were given the opportunity to file supplemental briefs on this issue post-*Williams* and we received and reviewed them before oral argument on this appeal. We now can say with the benefit of Supreme Court guidance that the California Court of Appeal necessarily adjudicated the merits of the petitioners' Sixth Amendment arguments when it rejected their juror removal claims on direct appeal. On appeal, Bell and DeMola presented integrated claims challenging the removal of Juror No. 7, which the district court determined were supported by both state and federal law. These claims were delineated under a single heading in Bell's and DeMola's habeas petitions, supported by identical facts and without distinct analysis. As a result, any Sixth Amendment claims raised by Bell and DeMola on appeal were not separate and distinct from, but instead were inextricably intertwined with, their California Penal Code § 1089 claims.

Given the overlapping nature of the petitioners' Sixth Amendment and § 1089 claims, it is improbable that the state

court simply neglected the federal issue and failed to adjudicate the constitutional claim. *See Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). As the Court said in *Williams*, "[r]egardless of whether [the petitioners'] § 1089 and Sixth Amendment claims [are] perfectly coextensive, the fact that these claims are so similar makes it unlikely that the California Court of Appeal decided one while overlooking the other." 133 S. Ct. at 1098.

In adjudicating the petitioners' claims on appeal, and in upholding Juror No. 7's dismissal under California Penal Code § 1089, the California Supreme Court was bound to comply not only with California law but also with federal constitutional standards, including the Sixth Amendment. In *People v. Cleveland*, 25 Cal. 4th 466, 484–85 (2001), the California Supreme Court prohibited trial courts from dismissing a juror during deliberations solely because that juror harbors doubts about the sufficiency of the prosecution's evidence—a decision which the Supreme Court held had "federal constitutional dimensions." *Williams*, 133 S. Ct. at 1098.

In discussing *Cleveland*, the Supreme Court noted that the California Supreme Court would likely not have "announc[ed] an interpretation of Cal. Penal Code Ann. § 1089 that it believed to be less protective than the Sixth Amendment, as any such interpretation would provide no guidance to state trial judges bound by both state and federal law." *Id*. Although, in the present case, the California Court of Appeal did not expressly reference *Cleveland* in its opinion, it was reviewing the actions of the trial court, which undisputably referenced *Cleveland* prior to removing Juror No. 7.

In light of the conjoined nature of the petitioners' state and federal claims, the similar legal analysis underpinning their resolution, and the Court of Appeal's obligation to dutifully comply both with state law and the federal Constitution, we conclude that it is "exceedingly unlikely" that the California Court of Appeal overlooked the petitioners' federal claims. *Id.* at 1099. The California Court of Appeal's opinion, finding that Juror No. 7 was properly removed, adjudicated the petitioners' federal claims on the merits and is entitled to deference under 28 U.S.C. § 2254(d).

Without the benefit of the Supreme Court's recent guidance in this area, the district court erred in undertaking a de novo review of the claims raised by Bell and DeMola in federal habeas proceedings. Under the appropriate standard of review, habeas relief should not have been granted absent a showing that the California Court of Appeal's decision was contrary to or based on an unreasonable application of Supreme Court precedent, or that it unreasonably interpreted the facts presented in the state court proceeding. 28 U.S.C. § 2254(d). Bell and DeMola cannot satisfy this deferential standard.

IV

A

The petitioners argue that the California Court of Appeal's decision, upholding the dismissal of Juror No. 7, was contrary to and an unreasonable application of clearly established federal law because the juror's use of a dictionary did not justify the extreme remedy of dismissal. The petitioners' argument fails for three reasons. First, the Court of Appeal upheld Juror No. 7's removal not because she had

consulted a dictionary but because she violated the trial court's explicit instructions to "not do any independent research [which includes] . . . looking at a dictionary." The court's instruction concluded with "if you do that, you will be in violation of your oath, and you will be excused as a juror in this case."

Second, the petitioners have not referenced any authority to support their contention that the California Court of Appeal's opinion is contrary to or based on an unreasonable application of clearly established federal law as announced by the United States Supreme Court. *See Renico v. Lett*, 130 S. Ct. 1855, 1866 (2010) (a court of appeal's decision "does not constitute 'clearly established federal law, as determined by the Supreme Court,' § 2254(d)(1), so any failure to apply that decision cannot independently authorize habeas relief under AEDPA"); *Grotemeyer v. Hickman*, 393 F.3d 871, 877 (9th Cir. 2004) (arguments based on state law do not have "any relevance to us[;] [a] federal court of appeals considering a petition for a writ of habeas corpus does not review state court decisions pursuant to state law like a state appellate court").

Third, the petitioners rely on cases in which the juror's misconduct was only revealed in conjunction with a motion for a new trial or in habeas proceedings. *See, e.g.*, *Fields v. Brown*, 503 F.3d 755, 783 (9th Cir. 2007) (en banc) (concluding on habeas review that the juror's use of a dictionary, discovered after the verdict was rendered, was harmless); *Mendoza v. Runnels*, 251 F. App'x 406, 408 (9th Cir. 2007) (unpublished) (affirming a state court's finding that the juror's use of a dictionary, discovered when filing a motion for a new trial, was harmless); *United States v. Steele*, 785 F.2d 743, 745–49 (9th Cir. 1986) (concluding that the

jurors' use of dictionary, discovered post-verdict, was harmless).

These cases are inapposite, as we are not asked to consider here ex post facto whether the verdict rendered is valid but whether the court properly removed a juror who committed misconduct during deliberations.   As the California Court of Appeal explained:

> [W]hen a trial court learns during deliberations of a jury-room problem which, if unattended, might later require the granting of a mistrial or new trial motion, the court may and should intervene promptly to nip the problem in the bud.  The law is clear, for example, that the court must investigate reports of juror misconduct to determine whether cause exists to replace an offending juror with a substitute.

At this stage of the proceedings, the Court of Appeal properly concluded that "[e]ven assuming [Juror No. 7's] misconduct had not been prejudicial *yet*, the trial court could reasonably find that, if she remained on the jury, she was likely to indulge in further misconduct."

## B

The petitioners also allege that the California Court of Appeal's conclusion that Juror No. 7 "committed misconduct by acting as an unsworn expert witness" is not only contrary to and an unreasonable application of clearly established federal law, but is also based on an unreasonable determination of the facts.   The petitioners claim that

"[j]urors are neither disqualified from service based on their personal expertise nor barred from using such experience as a means of interpreting the evidence in the record." Bell and DeMola note that "[d]epression is also a topic that 'any reasonable juror' is likely already familiar with before coming into the jury room . . . [and] [s]uch knowledge also does not qualify as expert testimony of the kind that would implicate the Sixth Amendment or require dismissal."

The petitioners' benign characterization of Juror No. 7's misconduct is contradicted by the record, which demonstrates that the juror represented that she had particularized expertise in the field of mental health, in which she was employed, and that she relied upon external sources to present her expert opinion to the jury. In evaluating the petitioners' claims, the California Court of Appeal determined that while "[j]urors' views of the evidence . . . are necessarily informed by their life experiences, including their education and professional work[,] [a] juror . . . should not discuss an opinion explicitly based on specialized information obtained from outside sources."

Juror No. 7 did not simply bring her personal experience to bear in evaluating the evidence before her. Instead, she returned home, compiled a definition from a dictionary, gathered data "from her profession," and offered the information to the jury. In presenting her analysis, Juror No. 7 instructed the jurors to rely on her expert opinion, which was based on "her education, her experience, [and] her clinical training," and ultimately concluded that "one of the defendants" suffered from depression. As the Court of Appeal held, "[t]here was ample evidence that Juror No. 7 was not just sharing her life experiences; she was asking the other jurors to rely on her expertise and specialized

knowledge." *See Grotemeyer*, 393 F.3d at 878 (it is "well established law that a juror may not bring into the jury room evidence developed outside the witness stand").

## C

The petitioners have failed to identify any directly controlling Supreme Court precedent that contravenes the California Court of Appeal's opinion that Juror No. 7's removal neither violated California Penal Code § 1089 nor the Sixth Amendment.  In the absence of established precedent, the California Court of Appeal's determination that the trial court properly discharged Juror No. 7 for cause was neither contrary to, nor an unreasonable application of, clearly established federal law.  Additionally, the California Court of Appeal did not unreasonably interpret the facts presented in the state court proceeding when issuing its decision.

## V

The petitioners further contend that they are entitled to habeas relief because the trial court's inquiry into juror misconduct impermissibly intruded upon the sanctity of jury deliberations. Bell and DeMola argue that the Supreme Court has held that it is improper for a trial judge to inquire as to the numerical division of a deadlocked jury.  In support of their claim, the petitioners primarily rely on *Brasfield v. United States*, 272 U.S. 448, 449–50 (1926), which bans the practice of polling juries in federal prosecutions, and *Burton v. United*

*States*, 196 U.S. 283, 307–08 (1905), which stated in dicta that federal trial judges should not inquire into jury balloting.[4]

Both of these cases are distinguishable. The Court did not hold in either *Brasfield* or *Burton* that the trial court's conduct violated the Sixth Amendment. Rather, in *Brasfield*, the Court prohibited jury polling under its inherent supervisory authority over the federal judiciary and not because of any particular constitutional imperative. *See Lowenfield v. Phelps*, 484 U.S. 231, 240 n.3 (1988) ("Our decision in *Brasfield* makes no mention of the Due Process Clause or any other constitutional provision. The Federal Courts of Appeals have uniformly rejected the notion that *Brasfield's per se* reversal approach must be followed when reviewing state proceedings on habeas corpus."). Additionally, as we have held, the admonition against jury balloting in *Burton* was dicta and, given its relationship to *Brasfield*, was "only supervisory in nature." *Locks v. Sumner*, 703 F.2d 403, 406 (9th Cir. 1983).

Under Supreme Court precedent, the remedy for allegations of juror misconduct is a prompt hearing in which the trial court determines the circumstances of what transpired, the impact on the jurors, and whether or not the misconduct was prejudicial. *Smith v. Phillips*, 455 U.S. 209, 216–17 (1982); *Dyer v. Calderon*, 151 F.3d 970, 974–75 (9th Cir. 1988) (en banc) (upon being alerted to potential juror

---

[4] The remaining cases cited by the petitioners have limited relevance and we do not read them as supporting their argument that the California Court of Appeal's decision was contrary to, or unreasonably applied, clearly established federal law. *See United States v. Martin Linen Supply Co.*, 430 U.S. 564, 575 (1977); *Remmer v. United States*, 350 U.S. 377, 382 (1956); *Quercia v. United States*, 289 U.S. 466, 469–70 (1933); *Clark v. United States*, 289 U.S. 1 (1933).

misconduct, the trial court "must undertake an investigation of the relevant facts and circumstances" and the investigation must "be reasonably calculated to resolve the doubts raised about the juror's impartiality").

The trial court conducted an evidentiary hearing to protect the jury from improper outside influence, inquired into the alleged misconduct, and undertook efforts to ensure that the jury's internal deliberations were not revealed. The record of the evidentiary hearing demonstrates that while the trial court's inquiry into Juror No. 7's conduct during deliberations was appropriately thorough, its investigation into juror misconduct was sensitive to these concerns and was not impermissibly intrusive. Indeed, on multiple occasions, the trial court instructed jurors not to disclose the substance of the conversations occurring during deliberations. Under these circumstances, the California Court of Appeal's approval of the juror removal and affirmance of the petitioners' convictions was not contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, the petitioners are not entitled to habeas relief on this ground.

## VI

We have consistently held that "the California substitution procedure" outlined in California Penal Code § 1089 "preserve[s] the 'essential feature' of the jury required by the Sixth and Fourteenth Amendments." *Miller v. Stagner*, 757 F.2d 988, 995 (9th Cir. 1985). In so holding, we have confirmed that California Penal Code § 1089 is not deficient in terms of protecting a defendant's Sixth Amendment right to an impartial jury, even when § 1089 is invoked to remove holdout jurors who represent the lone vote

for acquittal.  *Perez v. Marshall*, 119 F.3d 1422, 1426 (9th Cir. 1997).

In *Perez*, we held that "[t]he fact that the trial judge knew that [the removed individual] was the sole juror holding out for an acquittal when he dismissed her does not invalidate his decision to excuse her from jury service."  *Id*. at 1427.  Because good cause was established and "[n]othing in the record indicates that the trial court's discretion was clouded by the desire to have a unanimous guilty verdict," we concluded that the removal of a juror did not violate the petitioner's Sixth Amendment rights.  *Id*. (alteration in original).  As we noted, "the record show[ed] that the district court was forced to act, not because of [her] status as a holdout juror, but because of [her] . . . inability to continue performing the essential function of a juror—deliberation."  *Id*.

The scenario presented in *Perez* exists in this case.  The record reflects that the state trial judge took great pains to preserve the originally empaneled jury and declined to remove Juror No. 7 on four separate occasions in response to juror notes and complaints to the court.  For example, the court elected not to remove Juror No. 7 after Juror No. 12 alleged that she had offered a "clinical . . . decision of what the defendants may have been suffering from."  Additionally, the court did not act after the jury foreman claimed that Juror No. 7 had attempted to offer her expert medical opinion.  Lastly, Juror No. 7 was not dismissed after several members of the jury complained that she was not properly deliberating.  The court only removed Juror No. 7 after she consulted a dictionary, or other sources at home, in violation of its

express instructions, and attempted to function as an unsworn
expert on the petitioners' mental health.[5]

The Sixth Amendment guarantees a criminal defendant
the right to a "fair trial by a panel of impartial, indifferent
jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (internal
quotation marks and citations omitted). The Sixth
Amendment does not entitle a defendant to require retention
of a biased juror. Instead, a defendant is only entitled to a
jury composed of "jurors who will conscientiously apply the

---

[5] The district court's conclusion that "[t]here is a reasonable possibility
that the removal of Juror No. 7 stemmed from her view on the evidence"
is not a factual finding but rather is a legal conclusion derived from
language of our *Williams v. Cavazos* opinion. The now discredited
standard from *Williams* had held that "the critical Sixth Amendment
questio[n] [is] whether . . . it can be said that there is no reasonable
possibility that the juror's discharge stems from his views of the merits."
646 F.3d at 644.

Even if the district court's conclusion could be characterized as a
factual finding, the court's "account of the evidence is [im]plausible in
light of the record viewed in its entirety." *McClure v. Thompson*,
323 F.3d 1233, 1240 (9th Cir. 2003) (internal quotation marks omitted).
The trial court's four prior decisions not to remove the juror in question
demonstrated not that it was inclined to remove Juror No. 7 in an effort to
obtain a unanimous verdict, but that it was unwilling to remove the juror
until she explicitly violated court orders and attempted to serve as an
unsworn expert witness. The court's statements support this conclusion,
informing counsel that "[e]xcusing a holdout juror is a very serious move
that is disfavored by appellate courts . . . [s]o I certainly wouldn't excuse
a holdout juror, unless I was very satisfied that it was a clear indication of
juror misconduct, which may or may not exist in this case."

As a result, the record reflects that there was no reasonable possibility
that the impetus for Juror No. 7's dismissal stemmed from her assessment
of the case's merits, and any conclusion by the district court to the
contrary would be clearly erroneous.

law and find the facts," *Lockhart v. McCree*, 476 U.S. 162, 178 (1986), and that is "capable and willing to decide the case solely on the evidence before it," *McDonough Power Equip.*, *Inc*. *v. Greenwood*, 464 U.S. 548, 554 (1984) (internal quotation marks omitted). In protecting this interest, the California Court of Appeal correctly determined that removal of Juror No. 7 for cause neither violated California Penal Code § 1089 nor the Sixth Amendment.

## VII

Finally, DeMola contends that the sentence imposed, life in prison without the possibility of parole, violates the Eighth Amendment. She argues that, as a juvenile offender, the court was prohibited from imposing such a lengthy sentence. DeMola relies on the Supreme Court's recent decision in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), to support her argument.

In *Miller*, the Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders." *Id*. at 2469. The Court explained that "[m]andatory life without [the possibility of] parole for a juvenile precludes consideration" of the defendant's "chronological age and its hallmark features," the defendant's "family and home environment," the "circumstances of the [underlying] homicide offense," the fact that the offender "might have been charged and convicted of a lesser offense if not for incompetencies associated with youth," and "the possibility of rehabilitation." *Id*. at 2468. The Court stated that the Eighth Amendment requires "a judge or jury . . . to consider [such] mitigating circumstances before imposing the harshest penalty possible for juveniles." *Id*. at 2475.

Even assuming, without deciding, that *Miller* applies to the present case, DeMola was not sentenced to life without the possibility of parole pursuant to a mandatory sentencing scheme that did not afford the sentencing judge discretion to consider the specific circumstances of the offender and the offense.[6]   In fact, as is evident from the transcript of the sentencing hearing, the trial judge did make an individualized sentencing determination, just not one favorable to DeMola. The record shows that the judge viewed "DeMola []as the kingpin in organizing this [well-organized and well-executed] murder." Just before imposing DeMola's sentence, the judge stated:

> As far as Miss DeMola's participation in this case, it is shocking, this crime is heinous, it is an unthinkable crime demonstrating a cold, heartless, and uncivilized attack on her mother.  It is clear to the Court that the evidence is substantial and overwhelming with respect to Miss DeMola's guilt in this case.  And but for her guilt—but for her hatred of her mother, Mr. Bell and Mr. Long would not be here.

The judge also stated on the record that he had reviewed and considered the report on DeMola prepared by the Probation Department, which contained mitigating evidence related to

---

[6] It is not clear whether *Miller* may be applied retroactively on collateral review under *Teague v. Lane*, 489 U.S. 288 (1989).  *See In re Morgan*, 713 F.3d 1365, 1367 (11th Cir. 2013).  According to the state, DeMola's claim is also procedurally barred.  We need not resolve these questions because the California sentencing statute is not a mandatory one subject to the rule announced in *Miller*.

DeMola's education, health, substance use history, and lack of a prior criminal record. But ultimately the judge concluded that the impact on the victim's family, as illustrated by the fact that several of DeMola's relatives were in therapy and two relatives asked the court to impose the maximum sentence allowed by law, as well as the facts of the crime, including the special circumstances found by the jury of lying in wait and inflicting torture on the victim, warranted a sentence of life in prison without the possibility of parole.

This individualized assessment of DeMola and her offense was performed under California Penal Code § 190.5(b), which states:

> The penalty for a defendant found guilty of murder in the first degree, in any case in which one or more special circumstances enumerated in Section 190.2 or 190.25 has been found to be true under Section 190.4, who was 16 years of age or older and under the age of 18 years at the time of the commission of the crime, shall be confinement in the state prison for life without the possibility of parole or, *at the discretion of the court*, 25 years to life.

(emphasis added). Even though the face of this statute affords a sentencing judge discretion to impose a sentence of 25 years to life imprisonment in recognition that some youthful offenders might warrant more lenient treatment, the court concluded that such mercy was not warranted in the present case. Because the sentencing judge did consider both mitigating and aggravating factors under a sentencing scheme that affords discretion and leniency, there is no violation of

*Miller*.  As a result, assuming that DeMola's claim is not procedurally defaulted and that *Miller* applies retroactively (a question we do not decide), DeMola still cannot establish an Eighth Amendment violation.  Her claim for relief fails on this ground.

## VIII

The district court's order granting Bell and DeMola habeas relief is **REVERSED** and **VACATED**.  We **REMAND** this case to the district court with directions to **DENY** the petitioners' claims for relief, based on the Sixth and Eighth Amendments and discussed herein, and to consider the remaining unresolved claims in the petitioners' 28 U.S.C. § 2254 habeas petitions.  The panel shall retain jurisdiction over any future appeals.